

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 20, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

> Re:  **_United States v. Chu & Goodgame_,**
> **Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu and David Goodgame, and write jointly to seek an order compelling the government to immediately produce any _Brady_ material in its possession, as well as all outstanding Rule 16 discovery. In addition, because of the government's failures to timely provide this necessary discovery and disclosure material, Mr. Chu and Mr. Goodgame respectfully submit that the trial date, currently set for October 19, 2026, must be adjourned so that the defendants are afforded their Fifth and Sixth amendment rights.

### I.    The Court Should Order the Government to Immediately Produce all _Brady_ and Discovery Material

In accordance with Local Criminal Rule 16.1, on May 11, 2026, Mr. Chu served the government with a letter outlining various deficiencies with the discovery and _Brady_ disclosures produced to date. _See_ Ex. 25.[1] Mr. Chu requested that all outstanding discovery be produced no later than May 15, and asked to meet and confer about such requests. On May 13, 2026, the government responded with its own letter, ███████████████████████████████ ██████████████████████████ _See_ Ex. 26. Mr. Goodgame reiterated many of these discovery issues in his own letter dated May 14, 2026. _See_ Ex. 27. The parties met and conferred about these and other topics on Friday, May 15. Among other things, during that meeting, the government confirmed that numerous grand jury subpoenas remain outstanding and that it has not been enforcing (let alone moving to compel) compliance with the return date on those subpoenas, but rather accepting open-ended rolling productions. Schwartz Decl. ¶ 47. The government provided no more clarity about this position

---

[1]    All references to "Schwartz Decl." and "Ex. ___" refer to the Declaration of Matthew L. Schwartz in Support of Mr. Chu's Initial Pretrial Motions, dated May 20, 2026, and the exhibits appended thereto. All references to "Spencer Decl." refer to the Declaration of Arnold Spencer in Support of David Goodgame's Initial Pretrial Motions, dated May 20, 2026.



in its short and dismissive e-mail response to Mr. Goodgame's May 14, 2026 letter. *See* Ex. 28. Mr. Chu and Mr. Goodgame now seek the Court's intervention to resolve the parties' discovery disputes, which are materially impeding their ability to prepare for trial.[2]

### A.    *Brady* Material

On February 19, 2026, the government served Mr. Chu and Mr. Goodgame with a letter containing disclosures pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (the "*Brady* Letter"). *See* Ex. 19. Based on those disclosures, including but not limited to those relating to Jerome Kollar and Ameryn Seibold, as well as our review of the discovery produced to date, Mr. Chu and Mr. Goodgame have serious concerns that the government is in possession of further material, exculpatory information relating to the charged offenses. The government has an affirmative obligation to provide *Brady* material to the defense, and the Court has specifically ordered it to do so. ECF Nos. 16, 23. The government's case rises and falls on Kollar and Seibold. Their statements contain material exculpatory information disclosed only in the *Brady* Letter in summary form, characterized as the government sees fit. Both Mr. Chu and Mr. Goodgame are therefore entitled to the full FBI 302 reports and underlying witness notes for every meeting with those witnesses identified in that letter. These materials are critical—particularly because, as detailed below, the government's documentary proof is so deficient that its case necessarily relies almost entirely on the testimony of the two cooperating witnesses.

### B.    Rule 16 Discovery

Less than five months before trial, discovery is far from complete. As detailed in Mr. Chu's Initial Pretrial Motions and Mr. Goodgame's Initial Pretrial Motions, the government's productions have been extremely voluminous, including over a million pages of discovery as well as over 12 terabytes of electronic data, the vast majority of which is comprised of the complete, unreviewed forensic images of devices seized from Mr. Chu pursuant to search warrants. Despite this volume, the most critical discovery—including much of the documents and files from those devices actually responsive to the search warrants—remains outstanding, and the government has refused to provide any deadline for its production.

In his May 11, 2026 letter to the government, Mr. Chu requested, among other things, the following:

- All remaining material marked as responsive to the search warrants and seized from Mr. Chu and Mr. Goodgame's devices;
- All grand jury subpoena returns for subpoenas issued through the date of the letter;

---

[2]    Mr. Goodgame separately requested, by letter dated May 14, 2026, the immediate disclosure of all known existing *Brady* material in the government's possession. Mr. Chu notified the government that he joins in Mr. Goodgame's requests.



- The documents produced to the SEC that the government had offered to make available to the defense, as specifically requested by Mr. Chu more than a month ago;[3]
- Archived email for key Tricolor custodians, including Jerome Kollar, Ameryn Seibold, David Goodgame, Andy Mata, Mauricio Delgado, Katie Kollar, Alex Velasquez, Jordan Easley, and Reed Crow;[4] and
- Historical data and documents relating to the IDMS (dealer management) system used by Tricolor to generate borrowing base reports, at referenced in paragraph 10 of the Indictment.

Ex. 25 (May 11 Letter).



On May 13, 2026, the government responded, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 26 (May 13 Letter) at 1–2. As to the SEC discovery, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 1.

As of the parties' most recent conferral on May 15, the government had not produced any responsive documents from many of the devices and even as of today, it has not completed its responsiveness review of a *single* seized device—including devices from which it has already produced some materials. Schwartz Decl. ¶ 48. Just yesterday, the day before initial pretrial motions were due, the government transmitted a late-breaking production of 168,413 responsive records from four of the seized devices. *Id.* ¶ 37. Even as to those devices, based on the government's representations, more responsive records may be forthcoming because the government apparently views its searches of the devices as indefinitely ongoing. *Id.* ¶ 48; Ex. 26. Indeed, it has not begun reviewing several devices at all, including Mr. Chu's most recent laptop seized at the time of his arrest.[5] *Id.* ¶ 48. And it cannot estimate when any of these reviews will be complete. *Id.*

---

[3]    To avoid unnecessary duplication of discovery regarding third-party custodians who had also produced documents directly to the government, both Mr. Chu and Mr. Goodgame limited their requests to a subset of custodians. Nonetheless, the expected volume, according to the government, is over 100,000 documents.

[4]    The government has asked for additional information regarding this request which Mr. Chu has agreed to provide.

[5]    Several of the unreviewed devices, Mr. Chu understands, the government has been unable to access but is still trying to do so. *Id.* ¶ 46.



That is unacceptable. The government cannot substitute full mirror images for actual Rule 16 production. Those images contain 12.21 terabytes of data that are not responsive to the warrants — and forcing the defense to sift through them to find relevant materials is not what the federal rules contemplate. Nor can the government treat its review as an open-ended process, returning to the same electronic evidence a second, third, or fourth time in search of proof it failed to find before. The search warrants issued in this case do not authorize an endless review, and allowing one would exceed their legal authority.[6] *See, e.g., United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) ("the Fourth Amendment requires the government to complete its review, *i.e.,* execute the warrant, within a 'reasonable' period of time.").

As to Mr. Goodgame's seized device, the government has produced to Mr. Chu neither a forensic image nor a single responsive document. And while Mr. Goodgame received a full forensic image of his cell phone, no responsive documents have been identified or produced to date by the government, nor has a timetable for any such review been provided. Spencer Decl. ¶ 4.

Regarding the outstanding discovery from grand jury subpoenas, the meet and confer on May 15 raised even more troubling concerns than those identified in Mr. Chu's May 11 letter. While the government's responsive letter revealed that ███████████████████████ ███████████████████████████████████████████████████ More than two months ago, at the March 19 pretrial conference, the government indicated that it had produced most of the grand jury subpoena returns in its possession. Ex. 21 at 2:21–3:15. The implication of that representation to Mr. Chu and Mr. Goodgame was that while the government may continue issuing grand jury subpoenas as part of its purportedly ongoing grand jury investigation into new charges, the defense had received the returns from the subpoenas that had previously been issued. This proved an incorrect assumption, as during the May 15 meet and confer, the government revealed that in actuality, it was continuing to receive rolling productions from various grand jury subpoena recipients, that it had not sought to enforce the return dates on the subpoenas or any other production deadlines for third parties, and that it did not intend to seek to compel completion. Schwartz Decl. ¶ 47. The government also informed us that it did not intend to follow up with the subpoena recipients to ascertain when compliance with the subpoenas would be complete. *Id.*

Perhaps more troublingly, the government has continued to issue new grand jury subpoenas. The most recent ones Mr. Chu and Mr. Goodgame know about were issued on April 13; we know about that subpoena because it was served on DropBox, which notified both Mr. Chu and Mr. Goodgame that their personal information is included in its scope. *See id.* ¶ 18; Ex. 22; Spencer Decl. ¶ 5. New grand jury subpoenas are in line with the government's repeated suggestion that █

---

[6]    Mr. Chu and Mr. Goodgame also expressly reserve their rights to seek to suppress evidence improperly seized under the search warrants, including where the government is not in compliance with the procedures set forth in the warrant or with governing legal authority. *See, e.g., United States v. Wey*, 256 F. Supp. 3d 355, 403-04 (S.D.N.Y. 2017); *United States v. Lustyik*, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014) ("officers may not seize and retain items outside the scope of the warrant.").



████████████████████████████████████████████████████████████
███████████████████████ *See* Ex. 26 (May 13 Letter) at 3, 4.

Mr. Chu and Mr. Goodgame's specific discovery requests have fared no better. For several essential categories—including missing Tricolor emails—the government responded only that █ ███████████████████████████████████████████████████████████ *Id.* at 2, 3. That non-answer is telling. Mr. Chu specifically requested archived emails for key witnesses whose Tricolor laptop images the government has already produced, but those images are incomplete, missing the vast majority of the years falling within the alleged conspiracy period. That gap is unsurprising: Kollar and Seibold have pleaded guilty to destruction of records, and the missing data reflects exactly the kind of spoliation to which they have admitted.[7]

Similarly, Mr. Chu and Mr. Goodgame both requested data from Tricolor's IDMS dealer management system—which contained the database used by employees who then allegedly fabricated or manipulated loan data. In response, the government █████████████████ █████████████ *Id.* at 2–3. But that extremely limited discovery relating to IDMS, which essentially amounts to a snapshot in time from the fall of 2025, is woefully inadequate. It does not inform the defense who, during the *eight plus years* that the government alleges the fraud within Tricolor persisted, had access to the system, actually did access the system, requested or changed data, or generated reports. Considering that the allegations in the case focus on borrowing base reports generated from the IDMS system, this gaping hole in discovery is inexcusable—and raises serious questions about the government's investigation.

The government's stated response to the request for IDMS data ████████████ ████████████████████████████████████ *Id.* at 3. That position is hardly unassailable given how hand-in-glove the government and the trustee have proceeded during the pendency of this criminal case and the parallel bankruptcy proceeding. It is well established that the government's *Brady* obligation extends to favorable evidence known to others acting on its behalf. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022). And in any event, the undisputed fact remains that the government has chosen to affirmatively seek discovery from the trustee relating to Tricolor's data and files. While Mr. Chu and Mr. Goodgame do not possess copies of the underlying subpoenas or document requests, it seems highly unlikely that IDMS systems data, which was core to how the fraud was executed, was not captured by its requests. And the government certainly could seek to compel compliance with its requests from the trustee—even though in this case, compulsion is likely far from necessary. In other words, whether ██████████████████████████ or not, the government has acted affirmatively to obtain discovery it wants from the trustee and should not be excused from obtaining the materials most crucial to defending this case when it has the ability to get them.

The government's failure to satisfy its own discovery obligations has also rendered Mr. Chu and Mr. Goodgame unable to seek discovery of his own on a fully informed record. Mr. Chu

---

[7]   While some of the missing emails may be able to be reconstructed using the partial sets produced by the bankruptcy trustee, it is not at all clear how much.



and Mr. Goodgame intend to serve Rule 17(c) subpoenas on a variety of third parties.  To satisfy *Nixon*'s relevance, admissibility, and specificity requirements, 418 U.S. 683, 699–700 (1974), the defense must know what the government has and what it intends to introduce.  The government's continuously developing discovery record prevents Mr. Chu and Mr. Goodgame from tailoring their subpoenas to the available evidence.

Finally, the government's eleventh-hour motion to pierce Mr. Chu's valid privilege claims, ECF No. 41, is no surprise: it is the inevitable consequence of its own failures.  Having fallen inexcusably behind on its discovery obligations, the government now seeks to violate attorney-client privilege to make up lost ground and preserve a trial date that serves no rational purpose. Mr. Chu will respond to those baseless arguments in full separately.  But the motion should be seen for what it is: a naked attempt to cut corners that would have been unnecessary had the government simply waited to indict until it had made reasonable progress in its own investigation—an investigation it now appears to be completing in real time.

To remediate these significant failures by the government, Mr. Chu and Mr. Goodgame respectfully requests that the Court intervene, and order the following:

*First*, the government should be ordered to immediately and by a date certain produce all discovery currently in its possession, including the SEC productions and all responsive materials from the seized devices.

*Second*, the government must enforce the return dates on its grand jury subpoenas or, if it declines to do so, it must be barred from using later-produced evidence at trial.  The government cannot grant third parties countless extensions for no reason other than to continue to investigate the crimes charged and surprise the defendants at trial.

*Third*, the government must attempt to obtain and produce the critical categories of documents at the center of this case:

1.  The full, archived Tricolor email accounts of Jerome Kollar, Ameryn Seibold, David Goodgame, Andy Mata, Mauricio Delgado, Katie Kollar, Alex Velasquez, Jordan Easley, Reed Crow dating back to 2018.

2.  The full data set underlying Tricolor's dealer management system along with all audit trails/system activity logs between January 1, 2018 and the present.

Finally, Mr. Chu and Mr. Goodgame respectfully request that the government be compelled to produce all such materials by a date certain.



## II.    The Trial Date Must be Adjourned

Pending the completion of the government's discovery obligations, trial should be adjourned.  While Mr. Chu and Mr. Goodgame have no desire to prolong these proceedings, he must be afforded access to the evidence against him and a reasonable amount of time to digest, investigate, and follow up on that evidence before trial.

At the March 19, 2026 status conference, the government stated, "We are ready for trial. We are prepared to try this case as early as July."  Ex. 21 (March 19 Transcript) at 12:7–8.  The government's statement is even more perplexing now than it was then—over two months later, the government has failed to complete discovery or to commit to a date when it will, even with respect to grand jury subpoenas it issued and warrants it obtained many months ago.  Schwartz Decl. ¶ 47. Considering the government's failure to conclude Rule 16 discovery, the Court must adjourn the current trial date of October 19, 2026.  When the Court set that date, it expressly did so "in reliance on the expectation that the government will do what it has said it is doing as ongoing review, and will complete it in a time which is sufficient for the defense to prepare for trial."  Ex. 21 (March 19 Transcript) at 14:23–15:2.  That expectation has now been proven unmet.

Failure to produce discovery sufficiently in advance of trial violates the defendant's due process rights.  *See United States v. Tin Yat Chin*, 476 F.3d 144, 146 (2d Cir. 2007).  To remediate the government's misconduct, the Court may adjourn the trial under its inherent power to control its own docket, *see Dietz v. Bouldin*, 579 U.S. 40, 45 (2016), or pursuant to Rule 16(d)(2)(B), which permits the court to "grant a continuance" for a party's failure to comply with the Rule, *see United States v. Walker*, 974 F.3d 193, 204 (2d Cir. 2020) ("when the government violates Rule 16, the 'district court has broad discretion in fashioning a remedy'").

Courts regularly adjourn set trial dates for a variety of reasons, including "[t]he nature and extent of the charges, and the amount of discovery in the case."  *United States v. Felipe*, 1996 WL 18985, at *1 (S.D.N.Y. Jan. 18, 1996).  Here, the charges alone—including an almost never charged "continuing financial crime enterprise" offense with a 10-year mandatory minimum sentence and forfeiture allegations targeting almost $18 million—counsel strongly in favor of an adjournment.  Moreover, Mr. Chu and Mr. Goodgame cannot even understand the extent of the charges or what the evidence may show at trial, because substantially more discovery is expected, including the discovery from the government's search warrants.  This is an unacceptable scenario, and one that guarantees both Mr. Chu and Mr. Goodgame an unfair trial.

The impossibility of the current trial date is further demonstrated by the pending motion schedule.  The Court reasonably allowed Mr. Chu and Mr. Goodgame almost three months to submit pre-trial motions directed to the face of the indictment and discovery produced by February 19, 2026. Ex. 16 (January 13 Transcript) at 9:14–17.  The parties' briefing schedule extended just over two months.  ECF No. 35.  Thus, even if the government produced the last of its Rule 16 discovery *today*, any motions directed to this discovery would be due close to the trial date, leaving the Court with insufficient time to consider the issues and leaving the parties with insufficient time to adjust their trial approach in light of the Court's decision.



This chaos created by the government's discovery conduct is actually the *best case scenario* under the current trial schedule. We presume the government will take several more months to complete discovery. Remarkably, the government cannot say otherwise, as it has admitted it does not know when production will end. The government's stubborn and unjustified insistence on the current trial date would prejudice Mr. Chu and Mr. Goodgame's rights to review the discovery, prepare comprehensive motions, and receive a fully contemplated decision from this Court.

Mr. Chu and Mr. Goodgame therefore respectfully request an adjournment of the trial date, and invites the Court to follow the model set by Judge Torres earlier this month in *United States v. James*, No. 26 Cr. 29 (S.D.N.Y.)—a case likewise charging the CEO of an automotive parts company (First Brands Group) with defrauding its lenders through double-pledged collateral and false statements in financial records, and the only other case in recent memory charging the "continuing financial crime enterprise" statute, 18 U.S.C. § 225. In *James*, Judge Torres initially set a trial date in July, but several months beforehand the government had still not completed its Rule 16 disclosures or its responsiveness review from electronic devices, among other things. *See James,* ECF Nos. 43, 44. The Court, recognizing that motion practice (let alone trial) could not go forward with so much discovery outstanding, adjourned trial *sine die* and ordered the government to "inform the Court when it expects to *complete* discovery." *James*, ECF No. 49 (emphasis added). Not surprisingly, this caused the government to act with some urgency, but it still reported that it would take more than another month, until June 1, to complete production of the material in its possession. *James*, ECF No. 53. In response, the Court set trial—like this one, expected to last about a month—for February 9, 2027, or approximately eight months following the date when the government said it would be done producing the materials in its possession. *James*, ECF No. 59. (Motions were due just over two months after the June 1 discovery completion date. *Id.*).

The timeline adopted by Judge Torres is an appropriate one for this case, as well. Assuming the government can complete its production of discovery by June 1 in this case—a big if—a trial in the first quarter of 2027 would be appropriate. As a starting point, the government should be required to commit to a timeframe for the completion of discovery and the production of *Brady* material. Only then can the Court fairly set a schedule for pretrial proceedings and trial. But it is crystal clear that requiring the defendants to go to trial on the current timeline, given the state of the government's disclosures to date and especially in light of the anticipated future disclosures, would be manifestly unfair to the defendants and contrary to the interests of justice.

Thank you for your consideration of these requests.



Respectfully,

/s/ *Matthew L. Schwartz*

| | |
|---|---|
| Arnold. A. Spencer | Matthew L. Schwartz |
| Thomas (Dan) Cushing | Craig A. Wenner |
| Spencer & Associates | Jacqueline C. Kelly |
| 5956 Sherry Ln. | BOIES SCHILLER FLEXNER LLP |
| Dallas, Texas 75225 | 55 Hudson Yards |
| Telephone: (214) 358-8500 | New York, New York 10001 |
| E-mail: arnold@aspencerlaw.com |     Telephone: (212) 303-3646 |
|     dan@aspencerlaw.com |     E-mail: mlschwartz@bsfllp.com |
| |     cwenner@bsfllp.com |
| *Attorneys for David Goodgame* |     jkelly@bsfllp.com |

Adam Fee
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Suite 1800
Los Angeles, California 90067
Telephone: (213) 667-5100
E-mail: adam.fee@weil.com


*Attorneys for Daniel Chu*