

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 5, 2026

**BY ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

       **Re:**    ***United States v. Chu & Goodgame*,**
              **Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu and David Goodgame, and write in response to the government's June 3, 2026 letter opposing Mr. Chu and Mr. Goodgame's joint motion to compel discovery and to adjourn the current October trial date. The government's response is wholly inadequate. At the March hearing when the Court set a trial date, the government declared that it was ready for trial, wished to go to trial as soon as July, and would review and produce discovery well in advance of that date. Those statements were not accurate.

Now, the best the government can do is promise to review *one of five* devices seized from Mr. Chu, and Mr. Goodgame's device, by June 17, and to produce those responsive documents some time thereafter. The rest of the responsiveness review will be completed at some unspecified time, and in the meanwhile the government continues to obtain and produce enormous volumes of discovery. And the government's letter says nothing about its plans to supersede.

With all respect to the government, that is simply not good enough. Mr. Chu and Mr. Goodgame are entitled to a fair trial—including having fair notice of the charges and evidence against them—and there is absolutely no legitimate reason to rush an October trial. The government chose to charge Mr. Chu and Mr. Goodgame in December after a hasty and incomplete investigation, accusing them of a sweeping, years-long fraud. Yet despite the absence of any public safety risk or ongoing fraud—Tricolor had already ceased doing business—the government went to the grand jury before it was prepared to meet even its most basic obligations. It had not finished its investigation. It was not ready to timely produce discovery. For reasons it still has not explained, it had not even reviewed the vast majority of electronically stored information it had seized pursuant to search warrants executed months earlier. More than six months later, and only four months before the current trial date, the government still has not completed discovery and, even now, refuses to say when it will. At the same time, the government wants to preserve its ability to *use* materials from any and all of the unreviewed devices it refuses to submit to a



deadline. Under these circumstances, Mr. Chu and Mr. Goodgame cannot reasonably be expected to prepare for trial.  Forcing them to do so over their strenuous objection would trample their Fifth and Sixth Amendment rights and reward the government's *tactical* decision to seek an early trial date when they were not ready to provide the defense with adequate disclosures.

I.      **The Court Should Set a Deadline for Discovery and Require all *Brady* Material to be Turned Over Immediately**

Every day that the government fails to meet its discovery obligations impermissibly prejudices the defense and reveals the inaccuracy of the representations the government made to this Court in seeking a quick trial date.  Without the Court's immediate intervention, this prejudice will continue to mount.  Even setting aside Mr. Chu and Mr. Goodgame's specific requests, all of which are well-founded for the reasons discussed in our initial letter motion, ECF No. 50, the government has proved incapable of meeting its discovery obligations in a timely fashion without the Court's mandate.  The government's arguments against Mr. Chu and Mr. Goodgame's demands for Rule 16 discovery and *Brady* amount to nothing more than a lawless effort to foist their own obligations onto the defense.  They argue, for instance, that despite not completing a responsiveness review of the ESI as the search warrants explicitly require them to do, there is no prejudice to Mr. Chu because its data dump of over 12 terabytes of data—the equivalent of approximately 5,280,000,000 single-spaced typewritten pages—comes largely from Mr. Chu's own devices and his lawyers are "more than capable" of searching the material themselves.  ECF No. 52 at 3.

This is misdirection.  The judges who signed those search warrants did so on the condition that the government—not the defense—would review the devices for responsive material, and it is the government—not the defense—with obligations under Rule 16 to identify evidence it intends to use at trial.  The government cannot abdicate its legal obligations under the warrants and the Federal Rules of Criminal Procedure no matter how many lawyers are involved in the case.

And of course the government's response pays no heed whatsoever to Mr. Goodgame's position.  Mr. Goodgame has *no access whatsoever* to the full images of Mr. Chu's devices, just as Mr. Chu does not have access to the full image of Mr. Goodgame's device.  Mr. Goodgame is therefore entirely reliant on the government's timely identification and production of responsive materials.

The government's meek explanations regarding its failure to produce or manage grand jury subpoena returns are even less persuasive.  The government responds not at all to Mr. Chu and Mr. Goodgame's demands that the government enforce the subpoenas it has caused the grand jury to issue, including those subpoenas' return dates.  Instead, the government notes only that it has already produced a large volume of returns (saying nothing of the total volume additional returns it may produce going forward) and that part of an upcoming production from the Trustee may be duplicative with materials already produced—a matter seemingly for the defense to investigate and ascertain themselves.  ECF No. 56 at 5.  The government's non-response is completely unacceptable and belies the fact that it has simply *chosen* not to enforce its subpoenas so that it can continue investigating already-charged offenses.  Even now, in the face of Mr. Chu and Mr. Goodgame's express demands, the government still refuses to take any affirmative steps to



complete this discovery or provide any certainty about when it will be complete.  Meanwhile, in just the time since the defendants filed their motion, the government has produced an additional 162,795 documents, and has notified defendants that it is preparing to produce another 421,348, with no end in sight.

The government's refusal to act on its own has made the Court's intervention necessary here.  The government has blown past its own deadlines and shown its prior representations to the Court and to the defense to be unreliable.  It is imperative that the Court set a near-in-time deadline by which discovery—including all responsiveness review—must be complete.  After that date, the government should not be permitted to use newly obtained subpoena returns or newly identified materials from the same devices at trial.  There is simply no basis whatsoever to continue allowing the government to go back to the well again and again based on warrants executed in the fall and grand jury subpoenas returnable months ago.

Finally, Mr. Chu and Mr. Goodgame note that the government's arguments on discovery are completely silent as to what, until now, has been the overriding justification for the government's endless discovery requests and productions: the government's anticipated superseding indictment.  While the government has not disclosed whether or not it still intends to supersede with additional charges or parties, it's clear enough that it should not be permitted to continue issuing new grand jury subpoenas if the only offenses in play are those in the Indictment.

## II.    The October 19, 2026 Trial Date Must be Adjourned

Given the unresolved, extensive discovery issues in this case—many of which the government glosses over or completely ignores—its insistence on keeping the trial date is inexplicable.  The government is certainly right that the public has an interest in a speedy trial.  So do Mr. Chu and Mr. Goodgame.  But whatever interest there is in a speedy trial, it cannot overcome the need for a *fair* trial.  This is a problem entirely of the government's own making: it made promises back in March that it has entirely failed to live up to.

Discovery delays by the government in complex cases regularly result in adjournments to ensure the defense has a sufficient opportunity to prepare for trial.  The government attempts to downplay the significance of Judge Torres's recent adjournment of *United States v. James*, 26 Cr. 29 (AT), which like this case, involves a Section 225 charge.  The government argues that the adjournment would not have been so long if defense counsel had earlier availability.  ECF No. 56 at 8.  The precise length of the adjournment aside, it bears noting that unlike here, the government in *James* agreed to a discovery deadline of June 1, 2025—more than seven months before the new trial date (and four to six months before the hypothetical earlier dates the government suggests would have otherwise been appropriate).  With no such offer of a deadline here, it is disingenuous for the government to attempt to distinguish *James*.

As the Court is aware, pre-trial proceedings in complex financial fraud cases are often far longer than what the defense is suggesting here.  The handful of cases the government cherry-picks are totally unlike this case, and if anything support the defendants' arguments.  In *United States v. Heppner*, 25 Cr. 503 (JSR), Judge Rakoff imposed a six-week deadline for the government to produce discovery and they did so.  *Heppner*, ECF No. 16 at 3, 10; *id.*, ECF No. 36



at 7.  In *Heppner*, Judge Rakoff specifically ordered that the government's discovery deadline included completing its privilege and responsiveness review from devices seized from the defendant's home, and the production of responsive documents, within six weeks of the conference.  *Heppner*, ECF No. 16 at 3, 10.  In stark contrast to this case, the government turned over discovery in that timeframe and did not produce additional discovery thereafter.  *Heppner*, ECF No. 36 at 7.  Here, of course, the government's timetable for completing its review of seized devices is entirely indeterminate; its letter does not say anything about when it might finish reviewing the bulk of the remaining devices.

In *United States v. Blaszczack*, 17 Cr. 357 (LAK), Judge Kaplan also imposed a discovery deadline less than a month after arraignment (with discovery received afterwards to be promptly produced).  *Blaszczack*, ECF No. 58 at 9.  And more to the point, in both *Heppner* and *Blaszczack*, the defendants consented to the trial date.  *Heppner*, ECF No. 16 at 12; *Blaszczack*, ECF No. 58 at 13–14.  In *United States v. Bankman-Fried*, 22 Cr. 673 (LAK), *both* the defendant and the government affirmatively sought a trial date in the timeframe imposed by the Court.  *Bankman-Fried*, ECF No. 38 at 8-9; *see also id.*, ECF No. 278.

The government's cases simply are not like this one, and even if they were, they would be outliers.  More importantly, the relevant interests here weigh heavily in favor of granting the requested adjournment.  On the one hand, you have Mr. Chu and Mr. Goodgame's sacrosanct Fifth and Sixth Amendment rights.  They are both charged with serious federal crimes, including one—the continuing financial crimes enterprise charged in Count One, 18 U.S.C. § 225—that has scant legal precedent and presents numerous novel legal and factual issues.  If convicted on that count, Mr. Chu would face a minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment.  In other words, the stakes could not be higher.

On the other hand, according to the government, you have the hypothetical interests of the alleged victims in the case and creditors in the Tricolor bankruptcy.  While the defendants in no way minimize the interests of those parties, the fact is that the alleged victims here are some of the largest, most sophisticated financial institutions in the world.  The CEO of the largest alleged victim, JPMorgan Chase, once notably referred to a multi-billion dollar loss as a "tempest in a teapot."  And the reality is that the only private proceeding that is stayed pending resolution of this case, to our knowledge, is the Trustee's lawsuit against Mr. Chu, Mr. Goodgame, and the government's two cooperators; the overall administration of the Tricolor bankruptcy is proceeding.  In short, the stakes are not even remotely proportional, and whatever interest those private parties and the public at large have in a speedy trial are far outweighed by the defendants' constitutional rights to due process and a fair trial.  *Barker v. Wingo*, 407 U.S. 514, 532 (1972) ("the inability of a defendant adequately to prepare his case skews the fairness of the entire system."); *United States v. Didier*, 542 F.2d 1182, 1188 (2d Cir. 1976) ("The speedy trial rules cannot be used to deprive a defendant of adequate opportunity to prepare his defense."); *see also* 18 U.S.C. § 3161(h)(7)(B) ("The factors, among others, which a judge shall consider in determining whether to grant a continuance under [the Speedy Trial Act] are as follows:  (i) Whether the failure to grant such a continuance in the proceeding would . . . result in a miscarriage of justice.  (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section. . . .

**BSF**

(iv) Whether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.").

An adjournment of trial is required here. The government has had more than six months to complete discovery and meet its obligations. It has failed. It is still failing, and there is no reason to believe that anything will change any time soon, especially without a strict deadline for the completion of discovery. Mr. Chu and Mr. Goodgame want a speedy trial, but a fair one, and they should not be the ones to pay the price for the government's failures.

Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*
Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
        cwenner@bsfllp.com
        jkelly@bsfllp.com

Adam Fee
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Suite 1800
Los Angeles, California 90067
Telephone: (213) 667-5100
E-mail: adam.fee@weil.com

*Attorneys for Daniel Chu*

/s/ *Arnold A. Spencer*
Arnold A. Spencer (*pro hac vice*)
Thomas Dan Cushing (*pro hac forthcoming*)
SPENCER AND ASSOCIATES
5956 Sherry Ln., Suite 2000
Dallas, Texas 75225
Telephone: (214) 358-8500
E-mail: arnold@aspencerlaw.com
        dan@aspencerlaw.com

*Counsel for David Goodgame*

5