**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          v.<br><br>DANIEL CHU,<br><br>      Defendant. | S1 25 Cr. 579 (PKC) |

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT DANIEL CHU'S SECOND ROUND OF PRETRIAL MOTIONS**

JAY CLAYTON
United States Attorney for the
Southern District of New York

Micah F. Fergenson
Shiva H. Logarajah
Justin V. Rodriguez
Assistant United States Attorneys
   *- Of Counsel -*

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 2

    A.   Factual Background ................................................................................................ 2

    B.   The Charges and Charged Defendants.................................................................. 5

ARGUMENT ...................................................................................................................... 6

I.    COUNT ONE ADEQUATELY ALLEGES THAT CHU VIOLATED THE CONTINUING FINANCIAL CRIMES ENTERPRISE STATUTE.............................................................. 6

    A.   Applicable Law....................................................................................................... 6

        1.   The Requirements of an Indictment................................................................. 6

        2.   The Continuing Financial Crimes Enterprise Statute, 18 U.S.C. § 225......... 7

    B.   Discussion .............................................................................................................. 8

        1.   Count One Adequately Alleges a "Series of Violations." .............................. 9

        2.   Count One Adequately Alleges "At Least 4 Persons Acting in Concert." ................. 10

        3.   Count One Adequately Alleges that Chu Organized, Managed, or Supervised the Enterprise. ........................................................................................................ 11

        4.   Count One Adequately Alleges that Chu Received $5 Million or More in Gross Receipts from the Enterprise During Any 24-Month Period. ...................... 12

II.    CHU IS NOT ENTITLED TO A BILL OF PARTICULARS. ........................................... 13

    A.   Applicable Law..................................................................................................... 13

    B.   Discussion ............................................................................................................ 15

        1.   The Government Need Not Supply More Information about Count One. .................. 15

        2.   The Government Need Not Supply More Information About the Conspiracy, Bank Fraud, and Wire Fraud Affecting a Financial Institution Counts. .............................. 15

        3.   The Government Need Not Supply More Information About the Securities Fraud Counts. ........................................................................................................... 16

III.   CHU HAS NOT MET THE HIGH BAR TO BREAK GRAND JURY SECRECY. .......... 19

IV.   THE GOVERNMENT DID NOT "ABUSE" THE GRAND JURY PROCESS.................. 21

    A.   Applicable Law..................................................................................................... 21

    B.   Discussion ............................................................................................................ 23

CONCLUSION................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Fulton Cnty. Bd. of Registration & Elections v. United States*,
   2026 WL 1959461 (N.D. Ga. July 7, 2026)......................................................... 24 n.6

*Harris v. United States*,
   9 F. Supp. 2d 246 (S.D.N.Y. 1998)..................................................................... 10 n.2

*In re Grand Jury Proceeding*,
   971 F.3d 40 (2d Cir. 2020).................................................................................... 22, 23

*In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Robert M. Simels Esq.)*,
   (*"Simels"*,) 767 F.2d 26 (2d Cir. 1985) ........................................................ 22, 24, 26

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
   823 F. Supp. 3d 1 (D.D.C. 2026) ......................................................................... 24 n.6

*In re Grand Jury Subpoenas*,
   2026 WL 1783899 (D. Minn. June 22, 2026)....................................................... 24 n.6

*United States v. Bellomo*,
   263 F. Supp. 2d 561 (E.D.N.Y. 2003) ....................................................................... 14

*United States v. Bergstein*,
   No. 16 Cr. 746 (PKC), 2017 WL 4535944 (S.D.N.Y. Oct. 10, 2017)................................ 22, 23

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987)................................................................................... 13, 14

*United States v. Calk*,
   87 F.4th 164 (2d Cir. 2023) ....................................................................................... 24, 26

*United States v. Da Costa*,
   No. 23 Cr. 610 (PKC) 2024 WL 3014329 (S.D.N.Y. June 13, 2024) ........................................ 7

*United States v. Daugerdas*,
   837 F.3d 212 (2d Cir. 2016)...................................................................................... 7, 12

*United States v. Dawkins*,
   999 F.3d 767 (2d Cir. 2021)............................................................................................ 7

*United States v. Doss*,
   563 F.2d 265 (6th Cir. 1977) ........................................................................................ 24

*United States v. Gallant*,
No. 03 Cr. 232 (RPM), 2006 WL 278554 (D. Colo. Feb. 3, 2006) ............................................ 8

*United States v. Gibson*,
175 F. Supp. 2d 532 (S.D.N.Y. 2001) ................................................................................... 14-15

*United States v. Greenberg*,
No. 21 Cr. 92 (AJN), 2022 WL 827304 (S.D.N.Y. Mar. 9, 2022) ............................................ 21

*United States v. Haller*,
837 F.2d 84 (2d Cir. 1988) ......................................................................................................... 20

*United States v. Harris*,
79 F.3d 223 (2d Cir. 1996) ........................................................................................................... 8

*United States v. Harris*,
No. 92 Cr. 455 (CSH), 1993 WL 300052 (S.D.N.Y. July 30, 1993) ......................................... 12

*United States v. Henry*,
861 F. Supp. 1190 (S.D.N.Y. 1994) ........................................................................................... 14

*United States v. Hunt*,
No. 05 Cr. 395 (DAB), 2006 WL 2613754 (S.D.N.Y. Sept. 6, 2006) ....................................... 21

*United States v. James*,
No. 26 Cr. 29 (AT) (S.D.N.Y. May 5, 2026) ............................................................................. 23

*United States v. Leonelli*,
428 F. Supp. 880 (S.D.N.Y. 1977) ............................................................................................. 14

*United States v. Leung*,
40 F.3d 577 (2d Cir. 1994) ......................................................................................................... 22

*United States v. Mandell*,
710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010) ........................................................................... 13, 14

*United States v. Meregildo*,
876 F. Supp. 2d 445 (S.D.N.Y. 2012) ....................................................................................... 22

*United States v. Mitlof*,
165 F. Supp. 2d 558 (S.D.N.Y. 2001) ................................................................................... 13, 14

*United States v. Murphy*,
No. 21 Cr. 280 (AKH), 2022 WL 1270958 (S.D.N.Y. Apr. 28, 2022) ..................................... 15

*United States, v. Naason Joaquin Garcia*,
No. 25 Cr. 370 (LAP), 2026 WL 2111868 (S.D.N.Y. July 22, 2026) ....................................... 21

iv

*United States v. Ohle*,
    678 F. Supp. 2d 215 (S.D.N.Y. 2010)........................................................................................ 22

*United States v. Phibbs*,
    999 F.2d 1053 (6th Cir. 1993) ............................................................................................... 11

*United States v. Polanco*,
    145 F.3d 536 (2d Cir. 1998)................................................................................................... 11

*United States v. Punn*,
    737 F.3d 1 (2d Cir. 2013) ........................................................................................... 22, 24, 26

*United States v. R. Enters., Inc.*,
    498 U.S. 292 (1991)........................................................................................................... 21, 22

*United States v. Rigas*,
    258 F. Supp. 2d 299 (S.D.N.Y. 2003)..................................................................................... 14

*United States v. Rittweger*,
    259 F. Supp. 2d 275 (S.D.N.Y. 2003)..................................................................................... 14

*United States v. Rodrigues*,
    No. 22 Cr. 391 (PMH), 2024 WL 113744 (S.D.N.Y. Jan. 10, 2024) ..................................... 6, 7

*United States v. Salameh*,
    152 F.3d 88 (2d Cir. 1998)..................................................................................................... 22

*United States v. Scali*,
    No. 16 Cr. 466 (NSR), 2018 WL 369195 (S.D.N.Y. Jan. 9, 2018), aff'd, 820 F. App'x 23 (2d
    Cir. 2020) ............................................................................................................................... 20

*United States v. Torres*,
    901 F.2d 205 (2d Cir. 1990)................................................................................................... 13

*United States v. Torres*,
    No. 20 Cr. 608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021)....................................... 6

*United States v. Velastegui*,
    199 F.3d 590 (2d Cir. 1999)..................................................................................................... 7

*United States v. Walsh*,
    194 F.3d 37 (2d Cir. 1999)..................................................................................................... 13

*United States v. Walters*,
    910 F.3d 11 (2d Cir. 2018)....................................................................................................... 7

*United States v. Wedd*,
   993 F.3d 104 (2d Cir. 2021)............................................................................. 6, 7

*United States v. Williams*,
   504 U.S. 36 (1992)............................................................................................ 20

*United States v. Young*,
   745 F.2d 733 (2d Cir. 1984).............................................................................. 11

Statutes

18 U.S.C. § 225................................................................................................... 1, 2, 7, 8
18 U.S.C. § 225(b) ..................................................................................................... 9
18 U.S.C. § 3293 ....................................................................................................... 16
21 U.S.C. § 848......................................................................................................... 8

Rules

Fed. R. Crim. P. 6(e)(B)(vi) ..................................................................................... 20
Fed. R. Crim. P. 7(c)(1) ............................................................................................ 6
Fed. R. Crim. P. 17 .................................................................................................. 23

The Government respectfully submits this memorandum of law in opposition to defendant

Daniel Chu's second round of pretrial motions. *See* ECF Doc. Nos. 97 (notice of motion) and 99

(memorandum of law).[1]  Chu's motions should be denied in their entirety. In short:

(1) <u>Motion to Dismiss Count One</u>: Count One more than adequately alleges that Chu violated the continuing financial crimes enterprise, or "financial kingpin," statute, codified at 18 U.S.C. § 225. In his redo motion, Chu still fails to comprehend basic concepts (such the definition of an "enterprise") and he completely ignores Second Circuit law about the meaning of acting "in concert" that the Government cited in its first opposition. Chu's motion for the extraordinary relief of dismissal of Count One should be denied and he should stand trial on the merits.

(2) <u>Motion for a Bill of Particulars</u>: Undoubtedly Chu would *like* more information about the Government's proof and, surely, it would be helpful. But the law entitles him to nothing more at this point. The detailed speaking Superseding Indictment supplies Chu with information sufficient to understand the charges against him, to prepare a defense, and to protect against double jeopardy. In addition to the extensive text-searchable discovery he already has, Chu will also receive trial exhibits, a witness list, and Jencks Act material a month in advance of trial. Contrary to governing law, Chu's request seeks to improperly compel the Government to disclose the precise manner in which Chu committed the crimes charged. In other words, Chu's motion improperly seeks a bill of particulars as a discovery tool and should be denied.

(3) <u>Motion to Disclose Grand Jury Materials</u>: Chu does little more than repeat his prior motion. This motion, like his last, comes nowhere near the high bar to break grand jury secrecy and should be denied for substantially the same reasons as his prior motion.

(4) <u>Motion to Quash or Preclude Grand Jury Materials</u>: Chu's latest effort to shield from the public evidence of his guilt is a monument to his ignorance of the grand jury's work in this case and of the applicable law. Most strikingly, he accuses the Government of the impossible: issuing pre-indictment subpoenas "for the sole or dominating purpose of preparing an *already pending indictment* for trial" at a time when there was no indictment. With no law to support his claims, Chu invents his own: a return-to-sender doctrine that, he says, barred the Government from simply "continuing to accept" productions from willing and supportive parties, such as Chu's lender victims and Tricolor itself, the moment the grand jury returned its first indictment. Chu's entire motion is wrong on its face several times over. Nonetheless, the Government's *ex parte* submission about the grand jury's work should leave no doubt that the Government's use of the grand jury has been, at all times, entirely proper.

---

[1] "Chu Br." refers to Chu's memorandum in support of his motion. "ECF Doc." refers to an entry on the docket of this case. "Indictment" refers to the indictment, returned on December 15, 2025. *See* ECF Doc. 2. "S1 Indictment" refers to the S1 Superseding Indictment, returned on June 24, 2026. *See* ECF Doc. 77. Unless otherwise noted, case text quotations omit internal quotation marks, citations, and previous alterations.

**BACKGROUND**

**A.  Factual Background**

Daniel Chu was the founder and chief executive officer ("CEO") of Tricolor Holdings, LLC and its affiliates ("Tricolor"), a subprime auto retailer and financing company. S1 Indictment ¶ 1. From 2018 until the company's collapse in September 2025, Chu operated Tricolor through systematic fraud. *Id.* He did not act alone. Chu deputized subordinates to execute the nuts-and-bolts of his fraud, including (1) Tricolor's chief financial officer, Jerome Kollar, (2), Tricolor's chief operating officer, David Goodgame, and (3) Tricolor's senior director of finance, Ameryn Seibold. *Id.* ¶ 9. Kollar, Goodgame, and Seibold have since pleaded guilty to participating in Chu's fraud.

Tricolor funded its operations substantially through cash advances from several lenders with which Tricolor had entered credit agreements. S1 Indictment ¶ 5. Under these agreements, Tricolor pledged certain assets (either used cars in Tricolor's possession or, with respect to car loans that Tricolor had issued to its customers, car loan receivables) to the lenders as collateral and received cash advances secured by that pledged collateral. *Id.* In addition to these asset-backed lines of credit, Tricolor also raised capital by securitizing car loan receivables-that is, organizing groups, or tranches, of the receivables into classes of bonds that were then sold to investors. *Id.* Tricolor's lenders generally set eligibility criteria for the types of collateral that could be pledged in exchange for cash advances, with eligibility turning on, among other things, whether the car loan was current—meaning the customer was making timely payments—or past due, meaning the customer had missed a scheduled payment and the loan was delinquent. *Id.* ¶ 7. Tricolor pledged cars and loans and requested advances by sending lenders borrowing base reports, which were typically spreadsheets with rows of the loans pledged to the facility and dozens of data points for each loan. *Id.* ¶ 8.

2

At Chu's direction, Kollar, Seibold, Goodgame, and others at Tricolor engaged in a series of frauds directed at each of Tricolor's lenders. S1 Indictment ¶¶ 1, 9. These schemes operated through two primary mechanisms. First, the same collateral was "double-pledged" to multiple lenders, allowing Tricolor to receive cash advances on the same collateral from multiple lenders. *Id.* Second, loan data was manipulated to make ineligible, delinquent loans appear current and compliant with lender requirements. *Id.*

In the summer of 2025, lenders confronted Chu and others at Tricolor with concerns about Tricolor's collateral. S1 Indictment ¶ 2. The developing crisis prompted a series of calls among Tricolor executives, including, at times, Chu, Kollar, Goodgame, Seibold, and another Tricolor executive. *Id.* ¶ 20. During these calls, Chu and his conspirators initially plotted to conceal the fraud and to falsely claim that the collateral issues were due to an administrative error. *Id.* ¶ 2. Some of these calls were secretly recorded, seemingly without Chu's knowledge. *Id.* ¶ 20. These recorded calls include (1) Chu proposing a plan for defrauding Tricolor's auditors, *id.* at ¶ 21; (2) Chu fabricating a "Trump administration deferment" policy that did not exist to try and cover up the fraud, *id.* at ¶ 22; (3) Chu berating Seibold, not for committing fraud, but for getting caught, *id.* at ¶ 23; (4) Chu recounting how he falsely told a victim lender that his fraud was really a "systems issue," *id.* at ¶ 24; and (5) Chu laughing while comparing his fraud to Enron, one of the most notorious corporate frauds in United States history, *id.* at ¶ 25.

As the kingpin of the operation, Chu was the person who, by far, benefited the most, financially, from the fraudulent enterprise he oversaw. The series of fraudulent schemes that Chu directed allowed Tricolor to obtain hundreds of millions of dollars in cash advances from Tricolor's victim lenders. S1 Indictment ¶ 1. As Chu concedes, these fraudulently obtained advances were a lifeline for Tricolor and Tricolor could not have survived without them. *See Burns v. Chu et al.*, Adversary No. 3:25-ap-03126 (Bankr. N.D. Tex.) (Dkt. 83 at 1); *see also id.* at 4

3

(Tricolor "actually benefited from the alleged scheme because the resulting funding from those lenders and investors kept the company liquid"); *id.* at 6 (Tricolor "benefited from the alleged fraud in securing a financial lifeline"). Chu diverted that "financial lifeline" into his own pockets. Throughout the fraud scheme, Chu received tens of millions of dollars in compensation from Tricolor, including an annual salary, bonuses, management incentive units, and company-provided cars. S1 Indictment ¶ 26. For example, in 2025, Chu was paid a $15 million bonus. *Id.* Such an outsized bonus would not have been possible without the "financial lifeline" that Chu's fraud secured.

Chu allowed those at the bottom to bear the heaviest burdens of his crimes. As Chu's frauds unraveled and Tricolor approached collapse in the summer of 2025, Chu observed on a recorded phone call that the company was "definitely insolvent." S1 Indictment ¶ 26. That did not stop Chu from directing Kollar to pay him more than $6.5 million from the company's quickly diminishing funds. *Id.* Chu used some of this money to purchase a multi-million-dollar property in Beverly Hills, California on August 27, 2025. *Id.* Meanwhile, on September 5, 2025, with the company plummeting and unable to pay its workers, counsel for Tricolor, at the direction of the company's Board of Directors, demanded Chu immediately repay his $15 million bonus, noting in its demand letter "[a]s you are aware, the Company is suffering a severe liquidity crisis and is unable to pay accrued wages and trust fund tax obligations." ECF Doc. 41-2. Chu refused. The next day, September 6, 2025, Tricolor placed more than 1,000 of its employees on unpaid leaves of absence. S1 Indictment ¶ 26. On September 10, 2025, Tricolor filed for Chapter 7 bankruptcy. *Id.* By that time, the company's largest lenders had advanced and were owed more than $900 million as a result of Chu's schemes. *Id.* ¶ 3.

4

### B. The Charges and Charged Defendants

On December 15, 2025, grand jury sitting in this District returned a four-count Indictment charging Chu with a violation of Title 18, United States Code, Section 225 (Continuing Financial Crimes Enterprise) and Chu and Goodgame with violations of Title 18, United States Code, Sections 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution), 1344 (Bank Fraud), and 1343 (Wire Fraud Affecting a Financial Institution). *See* ECF Doc. 2.

On December 16, 2025, the United States charged Kollar and Seibold by information in seven counts with violations of Title 18, United States Code, Sections 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution), 1344 (Bank Fraud), 1343 (Wire Fraud Affecting a Financial Institution), 1014 (False Statements to a Financial Institution), 371 (Conspiracy to Commit Securities Fraud); Title 15, United States Code, Sections 78j(b), and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Securities Fraud); and Title 18, United States Code, Section 1519 (Destruction of Records). Kollar and Seibold pleaded guilty to all seven counts, pursuant to cooperation agreements.

On June 24, 2026, grand jury sitting in this District returned an eight-count S1 Superseding Indictment charging Chu with violations of Title 18, United States Code, Sections 225 (Continuing Financial Crimes Enterprise), 1349 (Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution), 1344 (Bank Fraud), 1343 (Wire Fraud Affecting a Financial Institution), 371 (Conspiracy to Commit Securities Fraud); and Title 15, United States Code, Sections 78j(b), and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Securities Fraud). *See* ECF Doc. 77.

On June 24, 2026, a Superseding Information was filed charging Goodgame in six counts with violations of Title 18, United States Code, Sections 1349 (Conspiracy to Commit Bank Fraud

5

and Wire Fraud Affecting a Financial Institution), 1344 (Bank Fraud), 1343 (Wire Fraud Affecting

a Financial Institution), 371 (Conspiracy to Commit Securities Fraud); Title 15, United States

Code, Sections 78j(b), and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5

(Securities Fraud); and Title 18, United States Code, Section 1001 (False Statements). Goodgame

pleaded guilty to all six counts, pursuant to a cooperation agreement. *See* ECF Doc. 78.

**ARGUMENT**

**I.     COUNT ONE ADEQUATELY ALLEGES THAT CHU VIOLATED THE
CONTINUING FINANCIAL CRIMES ENTERPRISE STATUTE.**

As he did in his first motion, Chu blends his arguments seeking to dismiss Count One into

those seeking a bill of particulars. This transparent attempt to sidestep the "Herculean burden" the

law imposes to obtain the "extraordinary" remedy of dismissal must fail. *United States v.
Rodrigues*, No. 22 Cr. 391 (PMH), 2024 WL 113744, at *2 (S.D.N.Y. Jan. 10, 2024). When a

charge contains the essential elements of the offense and gives notice of the core criminality at

issue, as Count One does, a trial must follow. Chu's motion to dismiss Count One should be denied.

**A. Applicable Law**

**1. The Requirements of an Indictment**

An indictment "must be a plain, concise, and definite written statement of the essential

facts constituting the offense charged" and must, for each count, "give the official or customary

citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to

have violated." Fed. R. Crim. P. 7(c)(1); *United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL

1947503, at *3 (S.D.N.Y. May 13, 2021). An indictment is sufficient under Rule 7 and the Fifth

Amendment "as long as it (1) contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and (2) enables the defendant to plead an

acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Wedd*,

6

993 F.3d 104, 120 (2d Cir. 2021).

To satisfy these requirements, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Wedd*, 993 F.3d at 120. Accordingly, an indictment must only describe the "core of criminality to be proven at trial," or the "essence of a crime, in general terms." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016). It need not describe "the particulars of how a defendant effected the crime." *Id.*

Dismissal of an indictment is a "drastic remedy that should be utilized with caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018). Under this standard, "[d]efendants seeking to dismiss an indictment carry a 'Herculean burden' given the extraordinary nature of the remedy sought." *Rodrigues*, 2024 WL 113744, at *2.

When considering a motion to dismiss an indictment, "the facts alleged by the government must be taken as true." *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999). This Court has aptly described the governing law in this regard:

> The Second Circuit has explained that a motion to dismiss is not a vehicle to test the strength of the government's anticipated evidence: at the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial. Otherwise, we would effectively be asking district courts to engage in summary judgment proceedings—something that does not exist in federal criminal procedure."

*United States v. Da Costa*, No. 23 Cr. 610 (PKC) 2024 WL 3014329, at *2 (S.D.N.Y. June 13, 2024); *see also United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021).

## 2. The Continuing Financial Crimes Enterprise Statute, 18 U.S.C. § 225

The centerpiece of Congress's legislative response to the savings-and-loan crisis was enacted in the Bank and Thrift Fraud Prosecution Act of 1990 and codified at Title 18, United States Code, Section 225. That statute provides:

(a) Whoever—

    (1) organizes, manages, or supervises a continuing financial crimes enterprise; and

    (2) receives $5,000,000 or more in gross receipts from such enterprise during any 24-month period,

        shall be fined not more than $10,000,000 if an individual, or $20,000,000 if an organization, and imprisoned for a term of not less than 10 years and which may be life.

(b) For purposes of subsection (a), the term "continuing financial crimes enterprise" means a series of violations under section 215, 656, 657, 1005, 1006, 1007, 1014, 1032, or 1344 of this title, or section 1341 or 1343 affecting a financial institution, committed by at least 4 persons acting in concert.

18 U.S.C. § 225.

Congress modeled Section 225 on the Continuing Criminal Enterprise statute, or "drug kingpin" statute, 21 U.S.C. § 848, and precedents construing Section 848 are instructive in interpreting Section 225. *See United States v. Gallant*, No. 03 Cr. 232 (RPM), 2006 WL 278554, at *3-4 (D. Colo. Feb. 3, 2006). To convict a defendant under Section 225, the Government must prove "(1) [the defendant] committed three or more violations of the bank fraud and/or wire fraud statutes affecting a financial institution; (2) the three or more bank fraud and/or wire fraud violations were part of a series of violations of these laws; (3) [the defendant] undertook to commit this series of violations in concert with three or more other persons; (4) [the defendant] organized, managed or supervised these three or more persons in connection with this series of violations; and (5) [the defendant] received $5 million or more in gross receipts from this series of violations during any 24-month period." *United States v. Harris*, 79 F.3d 223, 229 (2d Cir. 1996).

**B. Discussion**

Count One tracks the relevant statutory language and provides the approximate times and places of the alleged offense. Count One also includes 29 paragraphs of detailed factual and

statutory allegations about Chu's continuing financial crimes enterprise. Those allegations encompass the essential elements of the offense as described in the Second Circuit's *Harris* decision. They identify a series of underlying violations: five violations of the bank fraud statute and five violations of wire fraud affecting a financial institution against certain of Tricolor's lenders. They identify at least three people with whom Chu acted in concert: Kollar, Goodgame, and Seibold. They describe in detail how Chu organized, managed, and supervised the enterprise. And they allege that, over a 24-month period, Chu received tens of millions of dollars, which was only possible because of Chu's criminal enterprise. In doing so, Count One's allegations provide Chu with a "plain, concise, and definite written statement of the essential facts constituting the offense charged," as required by Rule 7, and much more beside.

Chu's new motion to dismiss Count One largely regurgitates the arguments Chu made in his first motion. Rather than rehash the same ground, the Government remakes and reincorporates the arguments set forth in its opposition to Chu's first motion to dismiss, *see* ECF Doc. 83 at 8-16, responds to Chu's new arguments, and highlights where Chu has failed to respond to Government's arguments, including those citing on-point Second Circuit law.

### 1. Count One Adequately Alleges a "Series of Violations."

Chu's confusion about what constitutes an "enterprise" under Section 225 persists. Under Section 225, a "continuing financial crimes enterprise" is defined as "a series of violations under [certain statutes], committed by at least 4 persons acting concert." 18 U.S.C. § 225(b). Put differently, Congress chose, by legislatively fiat, to define a "continuing financial crimes enterprise" as a "series of violations" and not, as it has in other contexts (like RICO), as an entity or group of individuals. Chu is simply unable to accept the plain terms of the statute. He insists that an "enterprise" under this statute must be a group of people or a company and he demands that the Government "clarify whether the alleged enterprise is made up of only four individuals,

the entire company, or somewhere in between." Chu Br. 17. Chu is trying to jam a square peg into a round hole. The "enterprise" is not "four individuals, the entire company, or somewhere in between." It is a "series of violations," five violations of bank fraud and five violations of wire fraud affecting a financial institution, set forth in the Superseding Indictment. As discussed in the Government's opposition to Chu's first motion to dismiss, that "series of violations" and the factual bases for it are more than adequately set forth in the Superseding Indictment's speaking and statutory allegations. *See* ECF Doc. 83 at 9-12.[2]

**2.   Count One Adequately Alleges "At Least 4 Persons Acting in Concert."**

As set forth in the Government's opposition to Chu's first motion to dismiss, Count One expressly alleges that the series of violations was "committed by at least four persons acting in concert," namely, at least Chu, Goodgame, Kollar, and Seibold. *See* ECF Doc. 83 at 12-13. Nothing more is required at this point.

Despite the Government's citation to Second Circuit law that rejects his position, Chu continues to argue that Section 225 demands that four people act in concert at the same time. *See* Ch Br. 20 ("If, for example, Mr. Chu demonstrated at trial that Goodgame was unaware of Kollar's fraud until 2025 (as Goodgame told the government), or that Seibold had no involvement whatsoever until 2021, the government necessarily could not satisfy the four-person requirement in or around 2018, when the crime is alleged to have begun."). Chu was wrong in his first motion and he is wrong again. When interpreting the analogous "in concert" language in the drug kingpin statute, the Second Circuit and every other court of appeals to consider the issue has rejected the

---

[2] Chu continues to lament that Count One "is ill-fit to the facts of this case." Chu Br. 19. The Government notes, however, that the facts in this case are uncannily similar to those in *Harris v. United States*, 9 F. Supp. 2d 246, 250-51 (S.D.N.Y. 1998). That case, like this one, involved a defendant who defrauded banks into lending money through the submission of falsified "borrowing base" reports and other documents. *Id.*

argument that the requisite number of persons must be acting in concert at the same time. *See United States v. Polanco*, 145 F.3d 536, 542 (2d Cir. 1998) ("Polanco first contends that the government must establish that he acted 'in concert' with five other persons at the same time, and that evidence of five persons involved at various times does not support his CCE conviction. The Second Circuit has already rejected this argument."); *United States v. Young*, 745 F.2d 733, 747 (2d Cir. 1984) ("As to the next requirement of the statute, that the continuing series of violations be undertaken by the defendant in concert with five or more other persons whom the defendant supervises, it is sufficient to note that the government need not establish that the defendant acted in concert with each of the other five persons at the same time."); *see also United States v. Phibbs*, 999 F.2d 1053, 1084–85 (6th Cir. 1993) (noting that "[e]very circuit which has considered this argument has rejected it"). The same holds true here. There is no requirement that Count One allege that Chu acted in concert with three other people at all times or even at any given particular time. The Government cited *Polanco*, *Young*, and *Phibbs* in its opposition to Chu's first motion, *see* ECF Doc. 83 at 12-13. Without any explanation, Chu simply ignores these cases and their holdings, which dispose of Chu's arguments.

### 3. Count One Adequately Alleges that Chu Organized, Managed, or Supervised the Enterprise.

The Superseding Indictment adequately alleges Chu's organization, management, and supervision of the enterprise, for the reasons set forth in the Government's response to Chu's first motion. *See* ECF Doc. 83 at 13-15.

On this point, Chu gripes that the Superseding Indictment alleges his direction of the fraud only "generically." Chu Br. 24. Not so, as reflected by the bullet-point lists in the Government's first opposition. *See* ECF Doc. 83 at 13-15, 21-22. In any event, there is no requirement that the Superseding Indictment plead the specific words and actions Chu used to direct the fraudulent

schemes. An indictment must only describe the "core of criminality to be proven at trial," or the "essence of a crime, in *general* terms." *Daugerdas*, 837 F.3d at 225 (emphasis added). It need not describe "the particulars of how a defendant effected the crime." *Id.* Accordingly, Chu's invocation of "generic[]" allegations is both an inaccurate description of the Superseding Indictment and, more fundamentally, not how the law works.

### 4. Count One Adequately Alleges that Chu Received $5 Million or More in Gross Receipts from the Enterprise During Any 24-Month Period.

The Superseding Indictment's allegations that Chu "received $5,000,000 and more in gross receipts from [the] enterprise during a 24-month period," S1 Indictment ¶ 27, and that, "during the 24-month period from August 2023 through August 2025, Tricolor made more than $19.3 million in salary and bonus net cash payments to CHU's bank accounts," *id.* ¶ 26, more than suffice.

Notably, Chu does not deny in his motion the admissions he made in Tricolor's bankruptcy proceeding, which the Government cited in its first brief, *see* ECF Doc. 83 at 15. These admissions show that the compensation Chu received from Tricolor constitutes gross receipts from the enterprise. Chu has admitted that the "alleged fraud actually benefited the Company by providing it with capital from those lenders and investors that allowed the Company to survive and grow." *See Burns v. Chu et al.*, Adversary No. 3:25-ap-03126 (Bankr. N.D. Tex.) (Dkt. 83 at 1); *id.* at 4 (Tricolor "actually benefited from the alleged scheme because the resulting funding from those lenders and investors kept the company liquid"); *id.* at 6 (Tricolor "benefited from the alleged fraud in securing a financial lifeline"). These admissions are significant because what might otherwise be "legitimate" salary and bonus payments are receipts from the enterprise if they were only possible "as a result of [the defendant's] continuing financial crimes enterprise." *United States v. Harris*, No. 92 Cr. 455 (CSH), 1993 WL 300052, at *8 (S.D.N.Y. July 30, 1993).

For all the reasons set forth above, Chu's motion to dismiss Count One should be denied.

## II.    CHU IS NOT ENTITLED TO A BILL OF PARTICULARS.

The twenty-four-page speaking Superseding Indictment supplies Chu with information sufficient to understand the charges against him, to prepare a defense, and to protect against double jeopardy. The Superseding Indictment, therefore, discharges its constitutional obligations without need for further particularization. The Government has also provided extensive text-searchable discovery organized with cover letters and indices. Chu will also receive trial exhibits, a witness list, and Jencks Act material a month in advance of trial, as the Court has ordered. Accordingly, Chu has already obtained more information (and will obtain more in advance of trial) about the nature of the allegations and, indeed, the Government's anticipated trial proof, than the law requires.

### A.  Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). "Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

"A bill of particulars is not a discovery device," *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010), and "[a]cquisition of evidentiary detail is not the function of the bill of particulars," *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (overruled on other grounds). The "wheres, whens and with whoms" are "beyond the scope of a bill of particulars." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001). Bills of particulars would undoubtedly be helpful to the defense in any case. But because "the law does not impose upon the

13

Government an obligation to preview its case or expose its legal theories," *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977), "[t]he ultimate test must be whether the information sought is necessary, not whether it is helpful," *Mitlof*, 165 F. Supp. at 569.

"The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). "Nor, given that a bill of particulars confines the Government's proof to particulars furnished, should a motion for a bill of particulars be granted where the consequence would be to restrict unduly the Government's ability to present its case, or permit the defendant to tailor her testimony to explain away the Government's case." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994); *see also United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."). As a general matter, if "the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574

Nor does the law "allow Defendants to use the vastness or complexity of the alleged conspiracy and its attendant documentary evidence as a sword against the government, when the Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them." *United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003); *see also Mandell*, 710 F. Supp. 2d at 385 ("the mere existence of 'mountains of documents' does not entitle [defendant] to a bill of particulars"). In short, courts "must examine the totality of the information available to the defendant, including the indictment and general pre-

14

trial discovery, and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001).

### B.  Discussion

Chu's request for a bill of particulars should be denied because the Superseding Indictment, discovery produced to date, and additional information that the Government has provided and will provide on the schedule already set by the Court are far more than sufficient to put Chu on notice of the nature and specifics of the crimes of which he is accused and to permit him to adequately prepare his defense. Courts "routinely" deny motions for bills of particular where, as in this case, the charging document is sufficiently detailed and further notice has been supplied through discovery. *See United States v. Murphy*, No. 21 Cr. 280 (AKH), 2022 WL 1270958, at *3 (S.D.N.Y. Apr. 28, 2022).

### 1.  The Government Need Not Supply More Information about Count One.

Because Chu generally rehashes the arguments made in his initial pretrial motion for a bill of particulars as to Count One, the Government relies on its prior opposition. *See* ECF Doc. 83 at 18-20.

### 2.  The Government Need Not Supply More Information About the Conspiracy, Bank Fraud, and Wire Fraud Affecting a Financial Institution Counts.

With respect to the bank fraud and wire fraud affecting a financial institution counts, Chu "renews and incorporates the arguments made in [his] Initial Motions," Chu Br. 26 n.8, but he does not acknowledge, let alone withdraw, the glaringly erroneous statute-of-limitations-based argument he made in his first motion. With respect to these counts, Chu argued in his first motion that the Government "must identify each occurrence that constitutes part of the continuing offense

and thereby tolled the statute of limitations." ECF Doc. 46 at 34. As explained in the Government's first opposition, Chu's argument makes no sense because he mistakenly believes that the applicable statute of limitations for these offenses is five years. It's not. It's ten years. *See* 18 U.S.C. § 3293. Accordingly, there has not been any "toll[ing] of the statute of limitations." The alleged conduct on these substantive counts took place between 2020 and 2025—*all of which* is within the 10-year statute of limitations. *See* S1 Indictment ¶¶ 34-41. Chu's failure to correct his error bespeaks the frivolity of his motion.

Because Chu otherwise generally rehashes the arguments made in his initial pretrial motion for a bill of particulars as to the bank fraud and wire fraud affecting a financial institution charges,[3] the Government relies on its prior opposition. *See* ECF Doc. 83 at 21-23.

### 3.  The Government Need Not Supply More Information About the Securities Fraud Counts.

Chu has more than adequate information regarding the securities fraud charges in Counts Seven and Eight of the Superseding Indictment, and no bill of particulars is necessary.

To start, the Superseding Indictment supplies ample information about the charges. On top of the already-extensive speaking allegations illustrating the massive fraud at Tricolor undertaken at Chu's direction, the Superseding Indictment includes speaking allegations regarding the "fraudulent practices" through which Chu and his co-conspirators defrauded bond investors in particular:

> Throughout the scheme, CHU and others misrepresented Tricolor's financial condition to potential bond purchasers and others involved in the securitization process. In some securitizations, after issuing loan-backed bonds to investors based on false assurances that the underlying loans would not be impaired, the conspirators then double pledged those same loans to the warehouse lending facilities. They further manipulated recovery amounts—which funds were to be

---

[3] While Counts Five and Six—charging bank fraud and wire fraud affecting a financial institution in connection with SPV5—are new to the Superseding Indictment, Chu does not present any arguments unique to Counts Five and Six. Chu Br. at 28.

paid to the bondholders—in order to reduce payments to bondholders and divert additional cash to Tricolor.

S1 Indictment ¶ 17. The "to wit" clause of Count Eight states that "CHU, while the CEO of Tricolor, engaged in a scheme to make material misrepresentations to investors in Tricolor's asset-backed securities regarding the collateral backing the securities and Tricolor's financial condition and to misappropriate investor funds and collateral for Tricolor's own use." *Id.* ¶ 47. Count Seven, which charges conspiracy to commit securities fraud, includes a similar "to wit" clause (*id.* ¶ 44) and further alleges two overt acts taken by Chu in furtherance of the conspiracy. One of those overt acts is Chu's signing a sale and servicing agreement with respect to a 2025 securitization, as Chu did for the securitizations generally. *Id.* ¶ 45(a). The other overt act is Chu's recorded statement to Kollar and Executive-1 about defrauding bondholders by including defaulted loans in the securitizations. *Id.* ¶ 45(b) ("On or about August 17, 2025, CHU told Jerry Kollar and Executive-1 that if Tricolor's loan performance had recently improved, the conspirators could try to transfer the fraudulent collateral from the SPV4 warehouse to future bondholders, stating that if the potential improvement in loan performance was 'right, then you can in theory put more shit in that securitization and it'll kind of wash out.'").

Further, in response to Chu's request for further information, the Government identified the securitizations at issue as TAST 2018-1, TAST 2018-2, TAST 2020-1, TAST 2021-1, TAST 2022-1, TAST 2023-1, TAST 2024-1, TAST 2024-2, TAST 2024-3, TAST 2025-1, and TAST 2025-2; directed the defense to relevant transaction documents (certain of which, as noted, were signed by Chu himself) and ongoing officer certifications (attached to emails on which Chu is copied); and provided examples of Tricolor's investor presentations (attached to emails that include Chu). *See* Exhibit 14 to Declaration of Matthew L. Schwartz in Support of Daniel Chu's Second Pretrial Motions.

17

Finally, the Government has provided extensive discovery to Chu—with securitization-related materials included from the outset of the Government's production, even though securities fraud charges were not included in the initial Indictment—and the parties have mutually agreed on a generous pretrial disclosure schedule, so-ordered by the Court, for witness lists, Jenks Act materials, and exhibits that will allow Chu to prepare for trial. In short, no bill of particulars is necessary to advise Chu of the securities fraud charges he will face at trial.

Chu's arguments otherwise are meritless. Chu claims that "the government omits key details" even as to the misrepresentations included in the July 15 Letter, such as "[w]ho prepared or made those misrepresentations," "[w]ho conveyed those misrepresentations to third parties," and "[w]ho were those third parties." Chu Br. at 28. In fact, Chu is not in the dark as to any of these points. Take the two investor presentations the Government identified in its July 15 Letter as examples. The first one is attached to a January 4, 2024 calendar invitation for a videoconference among Chu, Kollar, a particular investor, and several investment bankers representing Tricolor. The second one is a copy of the TAST 2025-2 investor presentation, which a simple search in the discovery shows Chu himself finalized and circulated via email.[4] Indeed, notwithstanding Chu's feigned cluelessness as to who made misrepresentations to Tricolor's investors, the Government has produced in discovery a recording of Chu stating: "I mean, all I fucking do is take analysis and go over 'em with investors."[5]

Nor is Chu in the dark as to other members of the securities fraud conspiracy (Chu Br. at 28)—after all, three named cooperating witnesses have pled guilty to conspiracy to commit securities fraud—and, in any event, the law does not require disclosure of such information through a bill of particulars. *See* ECF Doc. 83 at 18-19. Moreover, it is unclear why such disclosure

---

[4] USAO_REL_12_01215533.
[5] USAO_REL_01_00859417 at 03:59.

would even assist in preparing the defense, as Chu has made clear that he intends to argue, not that he failed to conspire with a particular person, but that he knew nothing about the massive fraud at the company he founded and controlled. *See* Chu Br. 1 ("Daniel Chu is innocent").

Lastly, Chu takes issue with the overt acts identified in Count Seven. *See* Chu Br. at 29-30. While the import of Chu's arguments is not exactly clear, they do not warrant a bill of particulars. First, Chu attempts to take the overt acts in isolation, when in fact they are but one component of the information available to Chu through the detailed Superseding Indictment and the Government's expansive pretrial disclosures, as set out above. For example, Chu's execution of a sale and servicing agreement on March 1, 2025 "is a neutral act," Chu Br. at 30, only if one chooses to ignore the rest of the Superseding Indictment. Second, Chu's assertion, with respect to the second overt act, that his statement about putting "shit" in a forthcoming securitization "occurred after the fact" is simply wrong. Chu Br. at 30. Chu was not discussing how to cover up a completed fraud. Rather, Chu was discussing how he could continue his fraud by concealing his ongoing crimes from one set of victims (the warehouse lenders) and by further defrauding another (the securitization investors). In any event, the overt acts are but a small piece of the extensive information and materials provided to Chu regarding the securities fraud charges, with still further information to come as the parties proceed towards trial.

Accordingly, the Court should deny Chu's request for a bill of particulars for the reasons set forth above and in the Government's initial opposition. *See* ECF Doc. 83 at 16-23.

### III.    CHU HAS NOT MET THE HIGH BAR TO BREAK GRAND JURY SECRECY.

Chu seeks disclosure of grand jury minutes and materials for the Superseding Indictment. Yet his argument is substantially the same as his argument to seek materials on the original Indictment. As discussed in the Government's initial opposition, the mixture of speculation and improper bases for relief come nowhere near meeting the standard for breaking grand jury secrecy.

19

*See* ECF Doc. 83 at 33-37.

In his new motion, Chu asserts that he is resting his argument on "inference from surrounding facts." Chu Br. at 33. Those facts are, in essence, statements contained in a *Brady* letter given to Chu which he alleges were omitted from warrant applications and so must have been omitted from the Government's grand jury presentation. Chu Br. at 34-36. Chu, however, fails to grapple with the rule that the Government is not required to "present exculpatory as well as inculpatory evidence" to the grand jury because, as the Supreme Court has explained, that "would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." *United States v. Williams*, 504 U.S. 36, 51 (1992). Accordingly, "any alleged failure to present exculpatory evidence to the grand jury cannot justify the relief [Chu] seeks." *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 369195, at *3 (S.D.N.Y. Jan. 9, 2018), *aff'd*, 820 F. App'x 23 (2d Cir. 2020).

Chu also asks the Court to infer from the Government's adherence to Rule 6(e)—and refusal to answer questions about matters before the grand jury—that a basis for breaking grand jury secrecy exists. As Chu puts it, the Government's unwillingness to answer questions about matters before the grand jury "is telling" and that if "the [G]overnment had corrected the identified deficiencies before seeking the Superseding Indictment, one would expect it to say so." (Def. Br. at 32-33). That is hardly correct. Rule 6(e) prohibits an "attorney for the government" to "disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(B)(vi). Indeed, Rule 6(e) is designed to ensure the "proper functioning of our grand jury system" because it "depends upon the secrecy of grand jury proceedings." *United States v. Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (internal quotation marks omitted). Chu cannot credibly argue that the Government's adherence to Rule 6(e) supports an inference that the Government abused the grand jury process.

20

At base, Chu is frustrated by the standard he must meet. *See* Chu Br. at 33 ("Adopting the [G]overnment's argument would effectively make it impossible for any defendant to obtain grand jury materials.")). But the standard is designed to be "very high." *United States v. Hunt*, No. 05 Cr. 395 (DAB), 2006 WL 2613754, at *10 (S.D.N.Y. Sept. 6, 2006). "Because of the significant interests advanced by grand jury secrecy" it is a "relatively demanding standard to satisfy," *United States v. Greenberg*, No. 21 Cr. 92 (AJN), 2022 WL 827304, at *26 (S.D.N.Y. Mar. 9, 2022), and "decisions to unseal grand jury records are rare," *United States, v. Naason Joaquin Garcia*, No. 25 Cr. 370 (LAP), 2026 WL 2111868, at *2 (S.D.N.Y. July 22, 2026).

For the reasons set forth above and in the Government's initial opposition, Chu comes nowhere near establishing that his case is the "rare" case where grand jury secrecy should be broken.

## IV. THE GOVERNMENT DID NOT "ABUSE" THE GRAND JURY PROCESS.

Chu additionally claims that the Government "abuse[d]" the grand jury process in two ways. *See* Chu Br. at 43-52. He first argues that the Government improperly "continu[ed] to accept" subpoena returns after the initial Indictment was returned. Chu Br. at 44. He next contends that the subpoenas issued after the initial Indictment (but before the Superseding Indictment) were issued for the sole or dominant purpose of preparing for trial and were therefore invalid. Chu Br. at 43-52. Both claims are factually and legally meritless. The Government's use of the grand jury has been, at all times, entirely proper. Chu's motion to quash or preclude grand jury materials should be summarily denied.

### A. Applicable Law

"A grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. R. Enters., Inc.*, 498

21

U.S. 292, 298 (1991). "A grand jury subpoena is presumed to have a proper purpose," and the party challenging the subpoena "bears the burden of showing that the grand jury has exceeded its legal powers." *United States v. Salameh*, 152 F.3d 88, 109 (2d Cir. 1998). "To satisfy this burden, the defendant must present particularized proof of an improper purpose." *United States* v. *Punn*, 737 F.3d 1, 6 (2d Cir. 2013). "[A]bsent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper." *United States v. Ohle*, 678 F. Supp. 2d 215, 233 (S.D.N.Y. 2010).

A grand jury's power continues so long as the grand jury is empaneled and the duty to comply with a grand jury subpoena endures until the grand jury expires. *See In re Grand Jury Proceeding*, 971 F.3d 40, 50 (2d Cir. 2020). "A grand jury's investigative power does not end when it indicts a defendant. Instead, 'post-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged.'" *United States v. Meregildo*, 876 F. Supp. 2d 445, 448-49 (S.D.N.Y. 2012).

While the "[t]he function of the grand jury is to inquire into all information that might possibly bear on its investigation," *R. Enters., Inc.*, 498 U.S. at 297, the Government may not "utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Robert M. Simels Esq.), ("Simels")* 767 F.2d 26, 29 (2d Cir. 1985). But "where the grand jury investigation is not primarily motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). Thus, "[a] grand jury . . . may continue its investigation into further criminal activity—even when the resulting evidence may relate to pending indictments—so long

22

as the subpoena does not manifest such a dominating purpose." *United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL 4535944, at \*2 (S.D.N.Y. Oct. 10, 2017).

### B. Discussion

Chu's motion betrays a profound ignorance of the nature and extent of the grand jury's work in this case. Chu does not know when the grand jury investigated him for which offenses, whether the grand jury is still investigating him, whether the grand jury is investigating others, and, if so, what offenses are under investigation. That is to be expected; the full nature and extent of a grand jury's work is secret by law and rule. However, as it did in the *Bergstein* case before this Court and others, the Government is making an *ex parte* submission about the grand jury's work to assure the Court that the Government has not "abused" the grand jury process in any way. *See Bergstein*, 2017 WL 4535944, at \*2 ("Based on *ex parte* submissions by the government, the Court is persuaded that the subpoena at issue is not for the sole or dominating purpose of gaining evidence for trial."); *see also United States v. James*, No. 26 Cr. 29 (AT) (S.D.N.Y. May 5, 2026) (ECF Doc. No. 56) (denying motion to quash post-indictment subpoena after receiving *ex parte* submission from the Government). But even without reference to that submission, Chu's motion fails.

He begins by arguing that the Government "abused" the grand jury by leaving pre-Indictment subpoenas open after the Indictment and continuing to accept documents produced in response to them. That argument collapses at the threshold. As the subpoenas were issued by a grand jury and the grand jury that issued them still sits, the subpoenas are presumed to be proper and the parties that received the subpoenas have an ongoing duty to comply with their command. Fed. R. Crim. P. 17; *In re Grand Jury Proceeding*, 971 F.3d at 50 (observing that subpoenas expire with issuing grand jury).

23

Chu confuses the procedural law to contend that the Government may not receive documents after the grand jury returns an indictment. He cites no such rule and there is none. Chu instead takes the principle that the grand jury cannot be used solely to prepare for trial and misapplies it. But every case he cites—*Punn*, *Simels*, *Doss*, *Calk*—involves *post-indictment* subpoenas. *See* Chu Br. at 45-51 citing *Punn*, 737 F.3d at 6 (challenge to post-indictment grand jury subpoena); *Simels*, 767 F.2d 26, 29 (2d Cir. 1985) (same); *United States v. Doss*, 563 F.2d 265, 276 (6th Cir. 1977) (same); *United States v. Calk*, 87 F.4th 164, 185-188 (2d Cir. 2023) (same).[6] None of those authorities provides a basis to challenge subpoenas issued *before* any indictment existed. And none could: it is impossible for the Government to issue a subpoena "for the sole or dominating purpose of preparing an already pending indictment for trial," *Punn*, 737 F.3d at 6, when there is no indictment. The pre-indictment subpoenas issued here, including the five pre-indictment subpoenas Chu cites that were served on JPMorgan, Tricolor, CBIZ, Wells Fargo, and Ares, are, therefore, not subject to the rule Chu invokes.

Even if they were, Chu would need to offer "concrete reasons" for the Court "to question the Government's purpose" at the time the subpoenas were served. *Calk*, 87 F.4th at 186. He offers none. The subpoenas to JPMorgan and Tricolor illustrate why: both were issued in early September 2025, days before Tricolor's bankruptcy filing, before prosecutors conducted any cooperating witness interviews, and at the very start of an investigation into a massive double-pledging and collateral manipulation scheme that caused hundreds of millions of dollars in losses. At that stage, the Government had literally just started its investigation, had no idea whether or when it would

---

[6] Chu also cites plainly inapposite, out-of-Circuit cases involving allegations that grand jury subpoenas were issued out of malice or with an intent to harass or were otherwise unreasonable at the time they were issued. *See* Chu Br. at 48-51 citing *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 9 (D.D.C. 2026); *Fulton Cnty. Bd. of Registration & Elections v. United States*, 2026 WL 1959461, at *7 (N.D. Ga. July 7, 2026); *In re Grand Jury Subpoenas*, 2026 WL 1783899, at *7, 10 (D. Minn. June 22, 2026).

seek an indictment, whom it might charge, or what crimes it might uncover. Any suggestion that these subpoenas were issued to prepare for an unscheduled theoretical trial on a nonexistent indictment is unfounded.[7]

Chu's rule would produce absurd and impractical results: the Government would have to delay consideration of any indictment until every subpoena recipient completed production or destroy any documents produced after indictment. The Federal Rules of Criminal Procedure do not impose such a system. Moreover, Chu's own examples highlight how his proposed rule would harm the interests of justice: JPMorgan and Tricolor have suffered massive losses at the hands of Chu and his conspirators, cooperated throughout, and have produced documents as requested by the grand jury. Yet, in Chu's upside-down world of grand jury practice, the Government cannot even "accept" a single page of materials from these victims the moment an indictment is returned. Thankfully, for the sake of the victims and the public, that is not the law.

Chu's present position also runs counter to the position he took in his May 20, 2026 motion to compel, in which he asked the Court to "order" the Government to "enforce the return dates on its grand jury subpoenas" so that it could, among other things, obtain from Tricolor every single email sent or received over an eight-year period by nine people. *See* ECF Doc. No. 50 at 6. That motion remains pending, and Chu has not withdrawn it. Apparently, on Chu's view, the only party who can make use of post-indictment grand jury productions is the defendant. Chu's self-serving and inconsistent views of the grand jury's power highlight their hollowness.

Chu's second argument is that the Government abused the grand jury by continuing to issue new subpoenas after the Indictment to gather evidence relevant to the same charges. But post-indictment subpoenas are permissible so long as they are not issued for the sole or dominant

---

[7] The Government is providing the Court with further information in its *ex parte* submission about the purpose of the subpoenas identified in Chu's motion.

purpose of trial preparation. They carry a presumption of regularity, and Chu must rebut that presumption with particularized proof. He offers none. The investigation here did not stop with the original Indictment; it continued, as the law allows, and resulted in the Superseding Indictment. Nothing about the timing, subject matter, or sequence of the subpoenas suggests an improper purpose.

Compounding the defects in his arguments, Chu seeks sweeping relief unattached to any particular subpoena. The law does not permit such shotgun motion practice. To carry his burden of offering "particularized proof," *Punn*, 737 F.3d at 6, that a subpoena was issued for an improper purpose, Chu must—first and foremost—identify the particular subpoena at issue, as litigants routinely do. *See, e.g.*, *Calk*, 87 F.4th at 185-188 (challenge to one subpoena served on one witness); *Punn*, 737 F.3d at 6 (challenge to two subpoenas served on two witnesses); *Simels*, 767 F.2d at 29 (challenge to one subpoena served on one witness). In his motion, Chu identifies only six specific grand jury subpoenas: five of which were issued before the Indictment and only one of which was issued after the Indictment but before the Superseding Indictment.[8] From there, Chu demands that the Government produce "all of the grand jury subpoenas issued that relate to the records produced to [him] in Rule 16 discovery." Chu Br. at 52. Not surprisingly, Chu cites no law in support of such sweeping relief because the law does not sanction such a free-wheeling intrusion into the grand jury's work. If Chu wishes to challenge a subpoena's purpose with "particularized proof," he must identify that subpoena. Chu's motion to quash or preclude, therefore, only applies to the six specific grand jury subpoenas he has identified.

---

[8] Those subpoenas are: (1) a grand jury subpoena to JPMorgan dated September 4, 2025, (2) a grand jury subpoena to Tricolor dated September 7, 2025, (3) a grand jury subpoena to CBIZ dated November 4, 2025, (4) a grand jury subpoena to Wells Fargo dated November 13, 2025, (5) a grand jury subpoena to Ares dated December 14, 2025, and (6) a grand jury subpoena to Dropbox dated April 13, 2025. *See* Chu Br. 10-11, 47-49.

For these reasons, and those detailed in the Government's *ex parte* submission, Chu's motion to quash or preclude grand jury materials should be summarily denied.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that Chu's motions should be denied in their entirety.

Dated: New York, New York
       July 28, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
    Micah F. Fergenson
    Shiva H. Logarajah
    Justin V. Rodriguez
    Assistant United States Attorneys

27