**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL CHU,<br><br>Defendant. | **Declaration of Special Agent Nicholas Kroll**<br><br>S1 25 Cr. 579 (PKC) |

I, Nicholas Kroll, state as follows:

## I. Introduction

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately nine years. During the course of my duties, I have investigated various sophisticated financial crimes, and I have received training about and participated in the execution of search warrants, and the review and analysis of both physical and electronic evidence.

2. This Declaration is based upon my participation in the investigation, including the search warrant execution process, my examination of reports, records, and digital evidence, my conversations with other law enforcement agents, including agents assisting in this investigation and other FBI and U.S. Attorney's Office personnel, and my training and experience. Because this Declaration is being submitted for the limited purpose of responding to defendant Daniel Chu's motion to suppress, *see* ECF Doc. Nos. 108-111, it does not include all the facts that I have learned during the course of this investigation or describe every investigative step taken. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Declaration were not necessarily made

to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement).

3. Since September 2025, prosecutors from the United States Attorney's Office for the Southern District of New York and agents from the FBI (including myself) and from the Federal Deposit Insurance Corporation Office of Inspector General ("FDIC-OIG") (the "Tricolor Case Team") have been investigating potential violations of federal criminal law related to Tricolor. During the course of this investigation, I have, among other things, participated in witness interviews, reviewed documents obtained by subpoena or voluntary production, and reviewed electronic evidence seized pursuant to judicially authorized search warrants.

## II. The Search Warrants

4. On September 26, 2026, United States Magistrate Judge Sarah L. Cave of the Southern District of New York signed a search warrant for two iCloud accounts (the dchu@tricolor iCloud account and dchu@tricolorauto iCloud account) associated with Chu (the "iCloud Warrant"). A copy of the iCloud Warrant is attached hereto as Exhibit 1.

5. On October 7, 2025, United States Magistrate Judge Ellen F. D'Angelo signed search warrants for Chu's person and personal residence to seize, among other things, electronic devices (the "Device Warrants," and together with the iCloud Warrant, the "Warrants"). A copy of each of the Device Warrants is attached hereto as Exhibits 2 and 3.

## III. The FBI Seized 21 Devices and Two iCloud Accounts.

6. On or about October 7, 2025, FBI agents executed the Device Warrants and seized 21 electronic devices. Each seized electronic device was later assigned an item number from 1B1 to 1B21.

7. On or about October 30, 2025, Apple produced the records called for by Section II of Attachment A to the iCloud Warrant.

## IV. The FBI Accessed 13 of 21 Seized Devices.

8. After the 21 devices were seized, I and other agents worked with the FBI's Computer Analysis and Response Team ("CART") to determine which seized devices could be accessed. The contents of some seized electronic devices sometimes cannot be accessed for various reasons, for example, if the device is damaged or if the device is encrypted in certain ways.

9. In total, the FBI, to date, has been able to access 13 of the 21 seized devices. Those 13 accessed devices are identified in the table in Appendix A to this Declaration.

## V. Agents Briefly Reviewed 3 of the 13 Accessed Devices and Designated No Responsive Material in Those 3 Devices.

10. Once a seized device is accessed, generally, the next step is to create a forensic image of the device. The Tricolor Case Team considered whether it should not create an image of any of the 13 accessed devices. To that end, shortly after the execution of the Device Warrants, as part of its reasonable, good-faith efforts to limit its search and seizure to responsive materials, the Tricolor Case Team invited Chu's counsel to identify any seized devices that were unlikely to contain responsive materials. To that end, I prepared (1) a spreadsheet that contained, for each of the 21 seized devices, the item number, a description of the device, a description of where the device was seized, and pictures of the devices; and (2) a sketch of Chu's residence that indicated where devices were found.

11. On or about October 24, 2025, a member of the Tricolor Case Team emailed the spreadsheet and sketch described above to Chu's counsel at the time, Daniel W. Levy, Esq.

12. On or about October 28, 2025, Mr. Levy identified certain devices that were unlikely to contain responsive material and requested their return.

13. Based on information from Chu's counsel and other information obtained during the course of the investigation, the Tricolor Case Team decided not to image three of the 13 accessed devices—Items 1B13 (iPad), 1B14 (laptop), and Item 1B20 (laptop). Instead, agents conducted brief manual reviews of these three devices and designated no material as responsive to the Device Warrants.

14. Prior to reviewing the contents of any seized devices or accounts, each agent on the Tricolor Case Team reviewed the Warrants, including the attachments to the Warrants, which set out the categories of evidence subject to seizure. *See* Exs. 1-3. The agents understood that the categories of evidence set forth therein dictated what could be designated responsive to the Warrants.

## VI. <u>The FBI Images the Remaining 10 of the 13 Accessed Devices.</u>

15. After excluding the three devices discussed above, the FBI created forensic images of the ten remaining accessed devices. Those 10 imaged devices are identified in the table in Appendix A.

## VII. <u>The Filter Team Process</u>

16. A filter team from the U.S. Attorney's Office was used to screen material that is potentially protected by the attorney-client privilege from imaged devices and the full iCloud search warrant returns. To that end, at the request of the Tricolor Case Team, on November 20, 2025, Chu's prior counsel provided a list of attorneys and firms to be used by the filter team. That list was later amended several times by Chu's current attorneys.

17. The filter team released to the Tricolor Case Team, on a rolling basis, versions of imaged devices with material that the filter team had screened out.

## VIII. The Responsiveness Review Process for the 10 Imaged Devices and the Two iCloud Accounts

18. The ten imaged devices and the two full iCloud accounts consist of a very large volume of data—7.87 terabytes of data, according to Chu. *See* Schwartz Declaration ¶¶ 9-10. Agents on the Tricolor Case Team took reasonable and appropriate steps to conduct a targeted search of those imaged devices and accounts to try and identify material that is responsive to the Warrants.

19. First, with respect to two of the ten imaged devices (1B15 (iPad), 1B19 (iPad)), agents conducted brief manual reviews of the devices, rather than extensive reviews of the device images. After doing so, agents designated no material in these two devices as responsive to the Device Warrants.

20. Second, the Tricolor Case Team has declined to conduct any search of the contents of another imaged device, Item 1B2 (laptop), because a version of that laptop was previously imaged in September 2026, at the direction of counsel for Tricolor, and produced in response to a subpoena. Accordingly, agents have not designated any material from Item 1B2 (laptop) as responsive to the Device Warrants.

21. Third, with respect to Item 1B3 (a voice recorder), agents reviewed 14 audio recordings, but designated only one of those recordings as responsive to the Device Warrants.

22. Fourth, with respect to the six remaining imaged devices—1B1 (iPhone), 1B4 (iPhone), 1B5 (iPhone), 1B7 (iPad), 1B10 (laptop), and 1B21 (iPhone)—and the two iCloud accounts, in light of the volume of materials in the search warrant returns, a file-by-file review of the data was impractical. Thus, in accordance with the applications for the Device Warrants, agents on the Tricolor Case Team used the document review platforms, Cellebrite, which is a platform specifically designed for reviewing and tagging cellphone (or tablet) extractions, Relativity, which is a document review platform regularly used to review emails, chats, and other documents, and

Axiom, which is a review platform commonly used for computer images. *See, e.g.*, Ex. 4 ¶ 20 ("In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to . . . document review programs"). No artificial intelligence models or tools were used in the responsiveness review.

23. In addition, agents on the Tricolor Case Team developed a list of search terms based on the categories of evidence in the Warrants and their familiarity with the factual background of the investigation. *See, e.g.*, Ex. 4 ¶ 20 ("In conducting this review, law enforcement personnel may use various methods to locate evidence, fruits, and instrumentalities of the Subject Offenses, including but not limited to . . . keyword searches [.]"). A list of approximately 65 search terms that were used is appended as Appendix 2 hereto.

24. On the Cellebrite platform, the review employed search terms but also used a number of different techniques to review data. For example, the review used filters for dates to search around critical periods of the fraud scheme under investigation.

25. The review on Cellebrite also involved manual review for documents that were responsive to the warrant, including investor materials, Tricolor Board Decks, and lender updates. The review then searched responsive communication around those materials.

26. Finally, the review on Cellebrite examined communications to and from key individuals, such as other Tricolor employees, known lenders and investors, potential lenders and investors, and business associates.

27. In the Relativity platform, agents ran search terms across the relevant data sets to try and locate responsive materials. Agents then reviewed samplings of the results of those searches as part of quality control efforts. The search term "Tricolor" was run only after the other search

terms had been used. Samples of the results of the "Tricolor" search were reviewed, and, based on that sampling, the agents made efforts to remove certain nonresponsive materials from the "Tricolor" search results, such as attempting to identify and remove spam or junk emails.

28. In both Cellebrite and Relativity review platforms, chats (such as text messages) are presented as continuous threads containing the full conversation between or among the participants from the inception of the chat to the conclusion of the chat. Thus, for example, a chat extending over several years is reviewed as a single chat thread, and is not segmented into shorter time periods, such as being segmented by day. Such long chat threads often consist of both responsive messages or exchanges, and nonresponsive messages or exchanges (such as personal messages). Making message-by-message responsiveness designations within a chat thread is impractical and, on the Relativity platform, not possible. Accordingly, as is customary based on my training and experience, where a chat thread contained responsive material, the full chat thread was designated responsive.

29. The results of the responsiveness review with respect to the six remaining imaged devices and the two iCloud accounts are summarized below:

a. No material was designated responsive on two of the six devices: Item 1B4 (iPhone) and 1B7 (iPad).

b. Item 1B10 (laptop) was reviewed using the review platform Axiom. A subset of materials on 1B10 was designated responsive.

c. Item 1B21 (iPhone): This device was believed to be the cellphone that Chu had been actively using at the time of the premises search. The responsiveness review of 1B21 was conducted primarily on Cellebrite, with the exception of the emails contained on 1B21, which were

instead reviewed on Relativity. The Cellebrite responsiveness review of 1B21 included media on the device, such as images, videos, and audio files, as well as other data in the Cellebrite extraction.

d. Item 1B1 (iPhone), Item 1B5 (iPhone), and the two iCloud Accounts: The materials from these devices and accounts were voluminous and there was potential for duplication with Item 1B21 due to Apple devices syncing via iCloud backups. Thus, only emails, chats, and documents were extracted from 1B1, 1B5, and the iCloud accounts were loaded to Relativity for review, and the other contents of these devices and accounts were excluded from review.

30. In summary, the total amount of data marked responsive to the iCloud Warrant is approximately 0.0075 terabytes—or approximately 0.001% of the overall size of the iCloud accounts. In addition, the total amount of data marked responsive to the Device Warrants is approximately 0.051 terabytes—or approximately 1.4% of the total size of the devices seized and imaged pursuant to the Device Warrants. The total volume of data marked responsive to the Warrants is approximately 0.08%.

## IX. The Return of Devices

31. In April 2026, the FBI returned eight seized devices to Chu. Two (Item 1B6 and 1B17) of those eight devices, the FBI was unable to access at all. The other six devices (Items 1B4, 1B13, 1B14, 1B15, 1B19, and 1B20), some of which Chu's counsel had requested to be returned, were reviewed as described above and no responsive material was designated.

## X. **Conclusion**

32. At all times, I endeavored to take reasonable and appropriate steps to try and identify material from the seized devices and iCloud accounts that was responsive to the Warrants. Based on my observations of, and interactions with, the other law enforcement agents working on the Tricolor Case Team, I believe that they, too, endeavored to take reasonable and appropriate steps to execute the Warrants.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 7, 2026

Nicholas Kroll
Special Agent
Federal Bureau of Investigation

## Appendix 1

| Item | Accessed? | Imaged? | Responsiveness Review Conducted? | Responsive Content Identified? | Responsiveness Review Challenged by Chu? |
|---|---|---|---|---|---|
| 1B1 (iPhone) | Yes | Yes | Yes | Yes | Yes |
| 1B2 (laptop) | Yes | Yes | Elected to Forego | No | No |
| 1B3 (voice recorder) | Yes | Yes | Yes | Yes | No |
| 1B4 (iPhone) | Yes | Yes | Yes | No | No |
| 1B5 (iPhone ) | Yes | Yes | Yes | Yes | Yes |
| 1B6 (laptop) | No | No | No | No | No |
| 1B7 (iPad) | Yes | Yes | Yes | Yes | No |
| 1B8 (laptop) | No | No | No | No | No |
| 1B9 (tablet) | No | No | No | No | No |
| 1B10 (laptop) | Yes | Yes | Yes | Yes | No |
| 1B11 (iPhone) | No | No | No | No | No |
| 1B12 (iPhone) | No | No | No | No | No |
| 1B13 (iPad) | Yes | No | Yes | No | No |
| 1B14 (laptop) | Yes | No | Yes | No | No |
| 1B15 (iPad) | Yes | Yes | Yes | No | No |
| 1B16 (laptop) | No | No | No | No | No |
| 1B17 (laptop) | No | No | No | No | No |
| 1B18 (iPad) | No | No | No | No | No |
| 1B19 (iPad) | Yes | Yes | Yes | No | No |
| 1B20 (iPad) | Yes | No | Yes | No | No |
| 1B21 (iPhone) | Yes | Yes | Yes | Yes | Yes |
| dchu@tricolor iCloud account | Yes | N/A | Yes | Yes | No |
| dchu@tricolorauto iCloud account | Yes | N/A | Yes | Yes | Yes |

**Appendix 2**

Aging
Alliance Bernstein
Ameryn Seibold
Andy Mata
Ares
Audit
Bad Debt
Bankruptcy
Barclays Bank
Beth Brooke
Blackrock
Bleed
Board
Bonus
Borrowing base
Brian Honda
C23
CBIZ
Charge off
Chase
Crowe
Daan Adams
Data tape
David Goodgame
Delinquent
Deloitte
Dupes
Duplicate
Dups
Fifth Third Bank
Financial Statements
FTI
Ganas
George Wilkins
Grant Thornton
Houlihan Lokey
IDMS
Ineligible
James Li
Jerry Kollar
JPMC
Libremax
Liquidity
Loans
Maggie Shoop

Mark Schmitz
Mauricio Delgado
Meridian
Mezz
Mezzanine
Monthly Servicer Report
MSR
Origin
Reed Crow
Securitization
Shortfall
Steve Ellis
TAST
TBK
Tricolor
Triumph Bank
VINs
Waterfall
Wilmington