**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

DANIEL CHU,

Defendant.

Case No. 25 Cr. 579 (PKC)

# DANIEL CHU'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE DERIVED FROM HIS SEIZED ELECTRONIC DEVICES AND ICLOUD ACCOUNTS

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Daniel Chu*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. The Government's Search Was Not in Good Faith and Violated the Fourth Amendment ..... 3

A. The Government's Use of Extraordinarily Broad Search Terms and Other Filters, Without Further Meaningful Review, Is Unreasonable ..... 5

B. The Government's Seizure of Entire Text Threads If They Contained a Single Relevant Message Is Unreasonable ..... 9

II. The Government's Responsiveness Review Resulted in the Seizure and Retention of Material Outside the Scope of the Search Warrants ..... 12

III. Blanket Suppression, or at Least an Evidentiary Hearing, Is Required ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. United States*,
116 U.S. 616 (1886) .......... 5

*Elkins v. United States*,
364 U.S. 206 (1960) .......... 17

*Stanford v. Texas*,
379 U.S. 476 (1965) .......... 15

*United States v. Aiello*,
814 F.2d 109 (2d Cir. 1987) .......... 18

*United States v. An*,
733 F. Supp. 3d 77 (E.D.N.Y. 2024) .......... 11

*United States v. Cardenas*,
302 F. App'x 14 (2d Cir. 2008) .......... 18

*United States v. Debbi*,
244 F. Supp. 2d 235 (S.D.N.Y. 2003) .......... 16

*United States v. Ganias*,
755 F.3d 125 (2d Cir. 2014), *aff'd en banc*, 824 F.3d 199 (2d Cir. 2016) .......... 16

*United States v. Garlick*,
2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023) .......... 15

*United States v. Guttenberg*,
2007 WL 4115810 (S.D.N.Y. Nov. 14, 2007) .......... 16

*United States v. Guzman*,
724 F. Supp. 2d 434 (S.D.N.Y. 2010) .......... 17

*United States v. Messalas*,
2020 WL 4003604 (E.D.N.Y. July 14, 2020) .......... 15

*United States v. Motovich*,
2024 WL 2943960 (E.D.N.Y. June 11, 2024) .......... 16

*United States v. Oztemel*,
2024 WL 3090251 (D. Conn. June 21, 2024) .......... 15

*United States v. Pena*,
961 F.2d 333 (2d Cir. 1992) .......... 18

*United States v. Schulte*,
2019 WL 5287994 (S.D.N.Y. Oct. 18, 2019) .......... 10

*United States v. Liu*,
239 F.3d 138 (2d Cir. 2000) .......... 3, 13

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017) ........................................................................ 7, 15

*Weeks v. United States*,
232 U.S. 383 (1914) ............................................................................................... 17

Daniel Chu respectfully submits this reply memorandum of law in further support of his motion to suppress evidence derived from his electronic devices and iCloud accounts.

## PRELIMINARY STATEMENT

The government's opposition raises far more questions than it answers. Among them:

- For a fraud that allegedly lasted eight years, what "dates" of "critical periods" did the government use as a search filter, to then seize *everything* that hit as responsive?

- Likewise, who are the "key individuals" that the government apparently seized *all* email communications "to and from"?

- After the government ran incredibly broad search terms like "bonus," "board," and "bleed"—and those are just the B's—what "sampling" did the government do?

- Same for its search of all documents containing the word "Tricolor," which appears in both one of Mr. Chu's email addresses and in his signature block?

- When the government identified non-responsive materials that got picked up by its 65 broad search terms, what did it do? Did it refine its search in some way, or just mark that particular document non-responsive?

- Did it even do that, given its production of thousands of now admittedly non-responsive documents?

- Did the government *really*, as its response seems to concede, seize years' worth of text messages between Mr. Chu and, for example, his wife, just because *one message* in that text chain hit on one of its search terms or date parameters? Or did it seize that whole text chain because she was a "key individual"?

- The government says it employed unidentified "quality control efforts." What were they, and why did they fail so badly?

Regardless of the answers, this much is clear: the government's execution of the search warrants for the iCloud accounts and electronic devices associated with Mr. Chu was fatally flawed by a review process *designed* to sweep in thousands of personal, irrelevant, and even privileged communications far beyond the scope of the warrants.

With respect to emails, the government does not even seriously try to defend its process. It does not meaningfully respond to the fact that well over 40% of the emails identified as

"responsive" were anything but. Buried on page 20 of its brief is this damning admission: "the Government does not intend to offer *any* of the emails attached as Exhibits to the Schwartz Declaration at trial." ECF No. 124 ("Opp.") at 20 (emphasis added).[1] Reading between the lines of the government's opposition, it seems that the government ran "Tricolor" as a safety-net search term—a word that appears both in Mr. Chu's signature block and in his email address—and conducted some unexplained "sampling" to weed out nonresponsive hits that obviously failed miserably.

Its explanation with respect to chats is equally unsatisfying. The government does not deny that it produced as "responsive" hundreds of text messages between Mr. Chu and his family members concerning the most personal of matters. It explains that this occurred because it treated the entire text correspondence between Mr. Chu and a third party—some of which spanned more than 14 years—as a single document. If there was a single relevant text in that entire thread, the government seized the entire thread as "responsive." So, for example, if Mr. Chu mentioned "Tricolor"—the company that he founded and operated for almost 20 years—*once* in his five year long text thread with his wife, the government seized the entire thread. This process, which was entirely of the government's design, absolutely ensured that it would seize numerous irrelevant and nonresponsive communications, and by itself turned the government's execution of the warrants into a general search.

---

[1] Capitalized terms not otherwise defined have the same meaning as in Daniel Chu's Memorandum of Law in Support of His Motion to Suppress Evidence Derived from His Electronic Devices and iCloud Accounts, ECF No. 111 ("Mot."). All references to "Schwartz Reply Decl." refer to the Declaration of Matthew L. Schwartz in Further Support of Daniel Chu's Motion to Suppress Evidence Derived from His Electronic Devices and iCloud Accounts, dated August 14, 2026. All references to "Ex. __" refer to exhibits to the Declaration of Matthew L. Schwartz in Support of Daniel Chu's Motion to Suppress Evidence Derived from His Electronic Devices and iCloud Accounts, dated July 24, 2026, ECF No. 110 ("July 24 Schwartz Decl.").

The government's opposition does not describe a reasonable or good faith search. Far from it. Its choice to rely on overbroad and ubiquitous search terms demonstrates its disregard for the contours of the Search Warrants, not to mention the privacy of Mr. Chu and his family. More, the government claims that Mr. Chu has no remedy unless and until the government identifies any of the non-responsive documents as trial exhibits. Nevermind that the government had no legal basis to seize those materials and has no right to maintain access to them ahead of trial. The government's insistence that it does merely underscores the ongoing Fourth Amendment violation at issue.

The fruits of the Search Warrants should be suppressed or, at a minimum, the Court should hold a hearing to get to the bottom of what the government did here, and why. Is this standard operating procedure for the government or, as we suspect, was the execution of the Search Warrants here extraordinarily rushed—tainted by the government's failure to conduct a genuine investigation before indictment, and its desire to do anything to maintain the earlier trial date set by the Court?

## ARGUMENT

Blanket suppression is required when the government (1) "effect[s] a widespread seizure of items that were not within the scope of the warrant," and (2) "do[es] not act in good faith." *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation marks omitted). Here, the government's entire approach to its review of the Chu Images violated the Search Warrants and, by extension, the Fourth Amendment.

### I. The Government's Search Was Not in Good Faith and Violated the Fourth Amendment

The government's own description of its review process illustrates the lawlessness of its approach, which was guaranteed to result in the seizure of substantial volumes of non-responsive

materials. The meat of its process is described in paragraphs 22–28 of the Kroll Declaration, ECF No. 125. In a nutshell, it appears that:

- The government loaded the contents of seized *cellphones and tablets* onto the "Cellebrite" review platform, and then ran a series of filters to identify documents that fell within certain (unspecified) date ranges, involved certain (unspecified) people, contained certain (unspecified) types of documents, or that hit on any of 65 search terms, including generic words like "board," "chase," "bonus," "bleed," "aging," "loans," "duplicate," and "origin," or the word "Tricolor"—the name of the business Mr. Chu founded and ran for years before the alleged fraud began. Kroll Decl. ¶¶ 22–26 & Appendix 2.
- It appears that the government then seized as responsive *every single document* that hit on *any* of these parameters, without *any* further review. *Id.*
- Meanwhile, the government loaded the contents of seized *laptops* onto the "Relativity" review platform. For the seized laptops reviewed on Relativity, the government only ran the same list of search terms. *Id.* ¶¶ 22, 27.
- A "sampling" of materials from the laptops that hit on one of the search terms were then reviewed by agents, "as part of quality control efforts." *Id.* ¶ 27. The government does not explain how the sampling was done, what happened when the subsequent review revealed non-responsive hits, or what other "quality control efforts" were employed. *Id.* The government does not explain how (if at all) it refined its methodology when the sampling identified non-responsive documents. For example, if the government's "sampling" identified a large number of non-responsive documents, as it presumably did, and the government's only response was to eliminate

*those specific ones*, as it presumably was (if that), then there was no "quality control" at all.

- Finally, regardless of whether it came from a laptop (reviewed in Relativity) or a cellphone or tablet (reviewed in Cellebrite), the government considered an entire chat thread with a person, regardless of duration, as a single document. Thus, if *any part* of the document hit on any one of the government's filters, "the full chat thread was designated responsive." *Id.* ¶ 28. For threads reviewed on Cellebrite, this would mean that the entirety of threads with certain (unspecified) people, or that had any messages that fell within certain (unspecified) date ranges, were marked responsive, as were any threads reviewed on either platform that contained, at any point, any of the 65 search terms. *Id.*

Stripped of the techno-jargon in the government's opposition, the government's own description of its search protocol demonstrates just how flawed it was. Its practices amounted to the digital-age equivalent of indiscriminate "rummaging." *Boyd v. United States*, 116 U.S. 616, 630 (1886).

### A. The Government's Use of Extraordinarily Broad Search Terms and Other Filters, Without Further Meaningful Review, Is Unreasonable

The government's reliance on extraordinarily broad search terms and date and name filters, without meaningful or effective subsequent review, was not in good faith and was objectively unreasonable.

According to the government, it reviewed the contents of ***phones and tablets*** seized at Mr. Chu's residence by running certain searches in Cellebrite—for files from (unspecified) time periods, or communications with (unspecified) people, or that hit on 65 search terms—and marking anything that hit on these parameters as responsive. Kroll Decl. ¶¶ 22–26; Appendix 2. The

government apparently did not conduct *any* subsequent review of the results—whether manually or through the use of artificial intelligence or other technology—relying on the searches alone. *Id.*

Meanwhile, for ***laptops*** seized at Mr. Chu's residence, the government ran just the 65 search terms on the Relativity platform, and then did some vague "sampling . . . as part of quality control efforts." *Id.* ¶¶ 22–23, 27. The government does not specifically explain how it reviewed materials seized from the iCloud accounts, other than that it did not conduct a "file-by-file review." *Id.* ¶ 22.

There is so much wrong with this process. To begin, the search parameters that the government chose to use were enormously broad, and ensured that vast amounts of non-responsive material would be seized. For example, choosing entire date ranges for "critical periods of the fraud scheme under investigation," *id.* ¶ 24, ensured that *everything* in that date range would be seized, regardless of content. The government's opposition doesn't specify what these "critical periods" are, but given that the charged offenses here spanned from 2018 through Tricolor's demise in late 2025, its response raises the very real possibility that it grabbed large quantities of material over a long period of time without regard for substance. Its choice to search for "communications to and from key individuals, such as other Tricolor employees, known lenders and investors, potential lenders and investors, and business associates," *id.* ¶ 26, was also necessarily overbroad.

Likewise, the search terms chosen by the government—including generic terms like "origin," "bleed," "bonus," "chase," *etc.*—are incredibly broad. And then there's "Tricolor," which appears in both Mr. Chu's email address itself (dchu@tricolor.com—it's in the iCloud Warrant, *see* Ex. A at -129), as well as in the signature block of his emails. *See, e.g.*, Exs. S-11–

S-16. This explains how the government seized emails with no content other than, for example, Mr. Chu's signature block and photos of his family. *See* Exs. Q, R, U.[2]

The use of such extraordinarily broad search parameters and terms *might* be appropriate, if it was used to winnow unimaginably big data sets to merely enormous data sets, which were then subject to further meaningful review. But that didn't happen here. By the government's telling, there was *zero* manual review, "sampling," or "quality control" for the materials reviewed on Cellebrite (*i.e.*, phones and tablets). That is obviously insufficient, and not good faith.

And for the Relativity review (of laptops), the government's opposition does not explain what its "sampling" or "quality control efforts" consisted of, or what it did (if anything) when it identified non-responsive documents. This much is clear: its quality control efforts, whatever they were, failed on a massive scale. The government produced almost 10,000 emails that are entirely blank or clearly junk, and more than 40% of all emails marked responsive to the Search Warrants were not. July 24 Schwartz Decl. ¶¶ 49–58. No wonder that it does not seriously try to defend its email search, and admits that it won't use any of the emails submitted as part of Mr. Chu's motion. Opp. at 20. Ultimately, the government unconstitutionally gave itself access to "a vast trove of personal information about [Mr. Chu], much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017).

---

[2] The Kroll Declaration says that "The search term 'Tricolor' was run only after the other search terms had been used." *Id.* ¶ 27. It is unclear whether that means the search was run last in time, as a safety net to ensure the government got everything, or whether it was run only on an already-narrowed set of documents. The government's inclusion of numerous emails from Mr. Chu to himself that contain nothing other than his signature block and photos certainly suggests the former, but ambiguities like this are one of many reasons why, if the Court doesn't grant Mr. Chu's motion outright, a hearing is necessary.

The government's lack of good faith in reviewing (or more aptly, failing to review) emails was surely the product of its attempt to speed to trial. Compare the government's review of the iCloud accounts with its review of Mr. Chu's electronic devices. From the 4.3 terabytes of iCloud data reviewed by the government first, the government produced just 566 responsive documents. *See* July 24 Schwartz Decl. ¶¶ 9, 14–15; Opp. at 9 ("approximately 0.001%"). Yet from the 3.57 terabytes of device data reviewed more recently, the government produced 220,632 responsive documents. *See* July 24 Schwartz Decl. ¶¶ 10, 20–23; Opp. at 9 ("approximately 1.4%"—a "responsive" rate 1,400 times larger). The difference? The government's iCloud review occurred before Mr. Chu sought to adjourn the trial date, whereas its review of the electronic devices occurred after, and admittedly as part of its "[e]fforts to maintain a previously scheduled trial date . . . ." Opp. at 19. *See* July 24 Schwartz Decl. ¶¶ 14–17, 20–23.

On this point, the government's opposition should not put the Court at ease. The description offered by the government is wholly insufficient regarding how it "ran search terms," "reviewed samplings of the results," and "sought to remove certain nonresponsive materials from the 'Tricolor' search results." *See* Opp. at 7–8. How the government's sample review overlooked almost ten thousand blank and junk emails—and whether the government did in fact remove any nonresponsive results of the "Tricolor" search—should be explored at an evidentiary hearing.

In addition, the government gives short shrift to Mr. Chu's spousal privilege concerns. However, the government's argument demonstrates exactly why its responsiveness review was unreasonable and requires suppression. The government's apparent position that it can *intentionally* seize material protected by the spousal privilege for use in ongoing or any future investigations, *see* Opp. at 18, illustrates the government's complete disregard for Mr. Chu's personal communications. Regardless of whether the government was constitutionally obligated

to filter for spousal privilege, nothing permitted the government to produce intimate, personal communications as responsive to the Search Warrants. Especially if Mrs. Chu was one of the unspecified "key individuals," Kroll Decl. ¶ 26, the Court should be extraordinarily troubled by the government's cavalier attitude towards the marital privilege and the necessarily private and personal communications that occur between husband and wife.

### B. The Government's Seizure of Entire Text Threads If They Contained a Single Relevant Message Is Unreasonable

The government's seizure of text and other chat threads was equally unreasonable and in bad faith. The government admits that, where "long chat threads" contained *any* "responsive messages," the government produced "the full conversation between or among the participants from the inception of the chat to the conclusion of the chat." Opp. at 8. And instead of processing the chat files and Bates-stamping them, the government also produced the chats to the defense in the same, native data format. Schwartz Reply Decl. ¶ 4.

This was a choice. Once the government determined that, for certain devices, "a file-by-file review of the data was impractical," and that it would use "document review platforms," it also then had to decide *how* the materials would be processed on those platforms. Kroll Decl. ¶ 22. For example, when the defense sent the same unprocessed images to our discovery vendor, the vendor told us that its "standard treatment" for chat threads was to load them into 24-hour periods. Schwartz Reply Decl. ¶ 5. The government did not do that. Instead, it treated each text thread, even if it spanned many years, as a single document. As a result, if any part of a thread hit on any of the filters utilized by the government—date range, name, search term—the government seized the whole thing.

The government does not seriously defend this as reasonable; instead it claims it had no choice. The government's brief argues that in Relativity, "the only option available for tagging

responsive documents was by full text chain." Opp. at 15. But the underlying declaration doesn't say that; it only says that "message-by-message responsiveness designations" is "not possible" in Relativity. Kroll Decl. ¶ 28. And of course, message by message designations *are* possible in general, whether with Relativity or another tool: in this very case, the government conducted a "message-by-message" privilege review of at least some chat threads. According to the government, its filter team reviewed and designated potentially privileged messages from chat thread files that were then produced to Mr. Chu in redacted form on June 12, 2026, with those individual messages removed. Schwartz Reply Decl. ¶ 8. There is also obviously enormous daylight—in some cases 14 years of daylight—between "full text chain" and "message-by-message," and there is reason to be skeptical that Relativity is literally unable to conduct a review in any other way. *See* "How to Review Text Messages Most Efficiently," *available at* https://www.relativity.com/blog/repost-review-text-messages-efficiently/ (explaining that reviewers should "[t]hink of each individual text message as a record": "each text message record has metadata associated with it," and "[t]ext message timeframes are normally measured in seconds"—not years). In fact, in response to Mr. Chu's motion, the government had no difficulty producing much more focused portions of chat threads. *See* ECF No. 126 (Logarajah Decl.) Exs. A–E. In any case, the government shouldn't get a free pass to violate the Constitution because it chose to work with the wrong tool for the responsiveness review.

For the same reason, the government's analogy of text threads to a "notebook that contains 'evidence . . . . intermingled [with] irrelevant or privileged information'" fails. Opp. at 15 (quoting *United States v. Schulte*, 2019 WL 5287994, at *3 (S.D.N.Y. Oct. 18, 2019)). A notebook is a physical object; it is impossible to seize anything less than the complete *thing*. Not so with electronic data, which can be sliced and diced in virtually any way—as the government's own

search protocol demonstrates. And as the exhibits to the July 24 Schwartz Declaration make clear, the government produced day after day of Mr. Chu's communications with his family members containing no responsive material whatsoever—only real-time insight into the Chu family struggles, emergencies, and tragedies. That also makes this case totally unlike *United States v. An*, 733 F. Supp. 3d 77, 105 (E.D.N.Y. 2024).

Simply put, the government's approach to reviewing text messages and other chats absolutely *ensured* that it would seize and retain enormous volumes of irrelevant and non-responsive stuff. Because it found a single needle, the government claims that it was justified in seizing not only the haystack, but all the hay. In a world where text chains routinely span years or even decades and jump from topic to topic with absolutely no through line other than that they're communications with the same person, the government's approach is not consistent with a good faith effort to comply with the warrant's limits. The Court should not permit such a blatantly unconstitutional practice—certainly not at least without requiring a much more robust explanation from the government of its methodology and technology that can be tested at an evidentiary hearing.

* * *

In short, every aspect of the government's approach to the Chu Images lacked good faith. Once it justified to itself that it could produce entire chat threads for "context" and use the broadest search terms, date ranges, and other filters it could possibly imagine, the government describes no efforts it undertook to meaningfully limit its review and production of nonresponsive material. And the proof is in the results: the government in fact produced thousands upon thousands of non-responsive documents.

## II. The Government's Responsiveness Review Resulted in the Seizure and Retention of Material Outside the Scope of the Search Warrants

That the government's responsiveness review yielded materials far outside the scope of the warrants is not reasonably in dispute. The government concedes that although it was required to produce documents that are responsive to the Search Warrants, "[s]ome are not." Opp. at 2. That's quite the understatement.

Despite acknowledging being in possession of materials for which the Search Warrants gave the government no authority to seize, the government repeatedly minimizes any bad effect. For example, the government spills substantial ink explaining how voluminous the total data sets from the Chu Images were in comparison to the "responsive" sets. *See* Opp. at 1, 9, 10, 16. That is far from dispositive, or even relevant. Rather, that the government identified only a relatively small percentage of the overall data contained in the Chu Images as responsive demonstrates that despite how expansive the universe of devices and accounts seized by the government was—including all electronic devices in Mr. Chu's family home, even those belonging to his wife and small children—the Chu Images largely contained benign, irrelevant materials.[3] That does not prove whatsoever that the government did a good faith review. It just makes *less* credible the government's allegation that, for nearly eight years, Mr. Chu "operated Tricolor through systemic fraud." ECF No. 77 (Superseding Indictment) ¶ 1. Regardless, on a motion to suppress based on the government's unconstitutional responsiveness review, the relevant inquiry is whether the government "effect[s] a widespread seizure of items that were not within the scope of the warrant," regardless of how many items it did *not* seize. *Liu*, 239 F.3d at 140.

---

[3] The government's opposition also does not parse how much of the data were substantive data files or communications, as opposed to system files, applications, or the other stuff that takes up so much of a device's memory.

As Mr. Chu has amply demonstrated, the government produced as "responsive" thousands of documents that are plainly not. *First*, the government falsely identified as responsive numerous highly personal messages based on its deliberate choice to review and tag full chat message threads together, rather than reviewing and tagging individual messages or batching them by day. This resulted in the government's continued possession of hundreds of pages of sensitive, highly personal communications having nothing at all to do with the charged offenses. In the defense review, by contrast, once each chat message chain was separated into individual 24-hour periods, Mr. Chu discovered that fully 21% of those message batches were from chains with his wife and adult children. July 24 Schwartz Decl. ¶ 66. That ratio holds true when looking at the messages individually too: more than 22% of the individual messages in the produced chat files are communications with Mr. Chu's immediate family. Schwartz Reply Decl. ¶ 7. Further, assuming most of Mr. Chu's individual messages with his family members are totally irrelevant—which the government does not dispute—it is likely that a far greater percentage of the total number of individual messages produced by the government are nonresponsive.

*Second*, the additional identification as responsive of hundreds more non-substantive, non-responsive documents exacerbates the problem. Again, the government shrugs off any wrongdoing by minimizing the issue. Opp. at 21–24. The government contends that 106 documents out of the 9,456 documents listed in Appendices A and B are actually responsive—as if that proves the reasonableness of its search. It does not. As Mr. Chu explained in his moving papers, identifying the full scope of blank and junk emails within the government's "responsive" production on a document-by-document basis would have been highly impracticable and cost-prohibitive, so Mr. Chu instead utilized a narrow set of search terms to identify junk emails and a custom coding process to help identify blank emails. *See* July 24 Schwartz Decl. ¶¶ 49–58. In

any event, the government takes issue with only 1.1% of the documents listed in Appendices A and B and concedes the rest, which only underscores the unreasonableness of its search and the relative precision with which Mr. Chu was able to determine the scope of the government's misconduct on a relatively short timeframe. The government had nine months to conduct its review; Mr. Chu's motion had to be filed with 24 days of receiving the last of the government's responsiveness production. *See* July 24 Schwartz Decl. ¶¶ 3–4, 20–23.

Because Mr. Chu's identification of blank and junk emails merely provided a preliminary means of assessing the government's misconduct, it by no means purported to establish the full extent of the nonresponsive documents at issue. *See* July 24 Schwartz Decl. ¶¶ 49–57 (describing how counsel undertook to identify the blank and junk emails "[u]pon encountering a number of" them in the government's productions, while noting that the scope of the government's misconduct has prevented Mr. Chu from conducting "a personal, document-by-document review" of the responsive material). Thus, the junk and blank emails listed in the appendices simply provide examples of the government's misconduct that can be readily identified in bulk—not an exhaustive accounting of the government's faulty review.

Mr. Chu has not been able to individually review the tens of thousands of "responsive" documents to ascertain exactly how many fall outside the Search Warrants' scope, *id.* ¶ 49–50, and the blanket suppression analysis does not require him to do so. *See United States v. Oztemel*, 2024 WL 3090251, at *10 n.11 (D. Conn. June 21, 2024) ("This Court cannot, and need not under Fourth Amendment jurisprudence, adjudicate which party has the better assessment as to 'responsiveness' on a document-by-document basis.").[4] Suffice to say, however, Mr. Chu in no

[4] More to the point, the government, unlike Mr. Chu, has a constitutional duty to execute its searches in compliance with the Fourth Amendment, including by taking reasonable steps to

way "concedes" (Opp. at 17) that a majority of the government's "responsive" emails are indeed responsive. Mr. Chu does not concede that any of the exhibits attached by the government to its opposition are indeed responsive to the Search Warrants. The Search Warrants narrowly prescribed their scope to "evidence, fruits, and instrumentalities" of the Subject Offenses. Ex. A (iCloud Warrant) at -133; Ex. B (Premises Warrant) at -225. Mr. Chu would thus disagree that, for example, blast news alerts or emails concerning Mr. Chu's son are responsive. *See* Opp. at 21, 23–24.

Finally, even assuming that the government's misconduct is limited to the documents previously identified by Mr. Chu and not disputed in the government's opposition, suppression is still warranted. The government mischaracterizes the legal authority in asserting that suppression is not granted where a majority of the production appears to be responsive. *United States v. Messalas* expressly reasoned that such a percentage-based analysis is decisive only "so long as . . . the search was otherwise executed in a reasonable fashion." 2020 WL 4003604, at *8 (E.D.N.Y. July 14, 2020). For the reasons set forth herein and in Mr. Chu's opening brief, that was not the case here, especially with respect to Mr. Chu's personal, and often privileged, communications with his spouse, family, and close friends.[5]

---

comply with the requirements of the judicially authorized Search Warrants. *Stanford v. Texas*, 379 U.S. 476, 485 (1965); *Wey*, 256 F. Supp. 3d at 383.

[5] Likewise, *United States v. Garlick*, cited by the government, concerned less than 2,000 responsive documents that were not of the highly personal nature at issue here, but that the court concluded captured "necessary context" and were thus "arguably encompassed" by the warrant terms. 2023 WL 2575664, at *11–13 (S.D.N.Y. Mar. 20, 2023). And, in *United States v. Motovich*, the government disputed the defendants' assertions that the seized documents were non-responsive, while the defendants made no argument that the number of nonresponsive documents "is in any way comparable to the number of unchallenged responsive documents." 2024 WL 2943960, at *15. (E.D.N.Y. June 11, 2024).

By contrast, the government does not address *United States v. Debbi*, which makes clear that blanket suppression is warranted where the government seized "many items that plainly fell outside the [Search Warrants'] parameters," and concluded that any particular percentage threshold was not required. 244 F. Supp. 2d 235, 237–38 (S.D.N.Y. 2003).

## III. Blanket Suppression, or at Least an Evidentiary Hearing, Is Required

Blanket suppression of the Chu Images is the only remedy that adequately accounts for the government's pervasive unlawful seizure and retention of documents outside the scope of the Search Warrants, prevents continued misconduct by the case team, and protects Mr. Chu from irreparable harm.

The government assures us that it "will not offer nonresponsive materials at trial." Opp. at 20. That ambiguous offer entirely misses the point. This is no mere evidentiary issue that can be resolved on the eve of trial by a motion *in limine*. *See United States v. Guttenberg*, 2007 WL 4115810, at *5 n.1 (S.D.N.Y. Nov. 14, 2007) ("A Motion to Suppress made pursuant to Fed.R.Crim.P. 41(h) asserts that evidence offered was illegally obtained; such motions are grounded in constitutional right. For non-constitutional violations, a Motion *In Limine* is the appropriate remedy."). The government's search was unlawful and violated Mr. Chu's Fourth Amendment rights, wholesale. The government is not entitled to retain possession of the unlawfully obtained materials for one more day, for any purpose. *See United States v. Ganias*, 755 F.3d 125, 139 (2d Cir. 2014), *aff'd en banc*, 824 F.3d 199 (2d Cir. 2016) ("If the [g]overnment could seize and retain non-responsive electronic records indefinitely . . . every warrant to search for particular electronic data would become, in essence, a general warrant."); *United States v. Guzman*, 724 F. Supp. 2d 434, 443 (S.D.N.Y. 2010) ("The Fourth Amendment's exclusionary rule requires suppression of evidence obtained as 'fruit' of an illegal search in order to deter lawless conduct by law enforcement agents and prevent the use of unconstitutionally obtained evidence in

federal courts."); *see also Weeks v. United States*, 232 U.S. 383, 393 (1914), *overruled on other grounds by Elkins v. United States*, 364 U.S. 206 (1960) ("If letters and private documents can thus be seized," "without sanction of law," "and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution."). The longer that the unlawful seizure continues, the more the prejudice to Mr. Chu will mount.

Furthermore, Mr. Chu is not willing to rely on any government assurances that are not strictly enforced by this Court. The government's conduct thus far demonstrates that it is willing to retract its assurances whenever convenient. *See, e.g.*, ECF No. 123 at 5–6. And while the government purportedly "does not intend to offer any of the emails attached as Exhibits to the [July 24] Schwartz Declaration at trial," it omits from its offer the hundreds of other invasive text messages Mr. Chu has identified thus far. Opp. at 20. To the contrary, the government says that it may want to use the invasive, *non-responsive* text messages to provide "context surrounding any given *responsive* message or text conversation." Opp. at 15 (emphasis added). Even though it cannot reasonably argue that these text messages are responsive, the government is actively reserving its rights to introduce some unidentified subset of non-responsive communications at trial.

The government also takes pains to note certain accounts and devices from which it produced no responsive documents or that Mr. Chu did not specifically call out in his opening brief. *See* Opp. at 4–5, 6, 8, 9, 12, 15–16 & n.2, n.3. However, the government stops short of arguing that blanket suppression, if granted, should be limited to particular devices—likely because, as the government itself has previously stated, the Chu Images contain an extensive

amount of overlapping data, such that suppression of less than all the devices may still permit the government to retain and use the same evidence (pursuant to the same unlawful responsiveness review) from another source. *See, e.g.*, ECF No. 85 at 2 n.1. Therefore, blanket suppression is required.

Mr. Chu respectfully submits that the record is sufficient for the Court to order such suppression now. But to the extent the Court is not prepared to do so, a hearing is necessary to lay bare how the government conducted its search and used its search filters, what its technology was capable of, what its "sampling" and "quality control efforts" consisted of, and the like. "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation marks omitted); *see United States v. Aiello*, 814 F.2d 109, 114 (2d Cir. 1987) (affidavits that raise "genuine issues of material fact" should be "explored further"); *see also United States v. Cardenas*, 302 F. App'x 14, 17 (2d Cir. 2008). Mr. Chu respectfully submits that on the record here, his motion cannot be denied without further fact-finding.

## **CONCLUSION**

For the foregoing reasons, Mr. Chu's motion should be granted in its entirety.

Dated: August 14, 2026
New York, New York

Respectfully Submitted,

/s/ *Matthew L. Schwartz*

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
cwenner@bsfllp.com
jkelly@bsfllp.com

Marshall Dore Louis
BOIES SCHILLER FLEXNER LLP
100 Southeast 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 357-8438
Email: mlouis@bsfllp.com

Adam Fee
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Suite 1800
Los Angeles, California 90067
Telephone: (213) 667-5100
E-mail: adam.fee@weil.com

*Attorneys for Daniel Chu*