**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL CHU | Case No.: 25-cr-579 (PKC) |

**REPLY TO DANIEL CHU'S OPPOSITION TO THE**
**<u>TRUSTEE'S MOTION TO QUASH SUBPOENA</u>**

Julia M. Beskin
**MCDERMOTT WILL & SCHULTE LLP**
919 Third Avenue
New York, NY 10012
Tel.: (212) 756-2000
jbeskin@mcdermottlaw.com

Julian L. André (*pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90064
Tel.: (310) 551-9335
jandre@mcdermottlaw.com

Rachele Lajoie (*pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
200 Clarendon Street
Boston, Massachusetts 02116
Tel.: (617) 535-4000
Fax: (617) 535-3800
rlajoie@mcdermottlaw.com

***Attorneys for the Chapter 7 Bankruptcy Trustee to Tricolor, Anne Burns***

## TABLE OF CONTENTS

**Page**


INTRODUCTION ....... 1

ARGUMENT ....... 2

I. Defendant's Original Rule 17 Subpoena Should Be Quashed In Its Entirety ....... 2

II. Defendant's Revised Rule 17 Subpoena Requests Should Also Be Quashed ....... 3

A. The Revised Requests Fail *Nixon* as They Are Not Specific ....... 3

B. The Revised Requests Fail *Nixon* as They Seek Inadmissible Evidence ....... 4

C. The Revised Requests Still Fail to Satisfy *Nixon* ....... 5

1. Revised Subpoena Request 1 ....... 5

2. Revised Subpoena Requests 2 and 3 ....... 5

3. Revised Subpoena Requests 4, 5, and 6 ....... 6

4. Revised Subpoena Requests 7 and 8 ....... 6

5. Revised Subpoena Requests 9, 10, and 11 ....... 7

D. Defendant Failed to Respond to the Trustee's Argument that the Subpoena is Unduly Burdensome ....... 8

III. The Trustee Has Not Waived Tricolor's Attorney-Client Privilege ....... 8

CONCLUSION ....... 10

Anne Burns, the Chapter 7 Bankruptcy Trustee to Tricolor Holdings, LLC ("Trustee"), submits this Reply in support of the Trustee's Motion to Quash the Rule 17 Subpoena.

## INTRODUCTION

Defendant Daniel Chu previously served the Trustee with an improper Rule 17 subpoena that plainly failed to satisfy the well-established standards set forth in *United States v. Nixon*, 418 U.S. 683, 700 (1974). Unable to defend his improper Rule 17 subpoena in response to the Trustee's Motion to Quash, Defendant's Opposition now claims that he is willing to "narrow" his improper Rule 17 subpoena. Def. Opp. Mot. Quash at 11, ECF 137 ( "Opp."). But Defendant's new requests are neither "narrow" nor appropriate under *Nixon* and Rule 17. To the contrary, Defendant has actually expanded their original requests to cover eleven categories of documents.

Defendant's 11 new requests fail to satisfy Rule 17 for the same reasons as the original seven requests. Instead of seeking limited, specific, and admissible evidence to be used at trial, Defendant is engaged in a fishing expedition to, in his own words, "find[] the truth behind the government's allegations." Opp. 29. Rule 17, however, requires much more and cannot "be used as a device to gain understanding or explanation." *United States v. Ho*, 2026 WL 184622, *3 (S.D.N.Y. Jan. 23, 2026). The Trustee should not be required to expend limited estate assets to respond to Defendant's overly broad and unduly burdensome requests, especially when the Trustee has already devoted extensive resources to search for, review, and produce over 1.1 million files to the government. Trustee Mot. 5.

Contrary to Defendant's claim, the Trustee has never taken the position that no Rule 17 request should be permitted. Opp. 14. The Trustee will comply with any lawful Rule 17 subpoena, just as it previously complied with the Grand Jury subpoena. But it is Defendant's burden—not the Trustee's—to identify specific admissible evidence for production under Rule 17. Yet, during

the parties' meet-and-confer, and again in his Opposition, Defendant has failed to identify any specific admissible document to be produced in response to the Rule 17 subpoena. André Decl. ¶ 7. Defendant should not be permitted to blame the Trustee—who is not a party to this criminal case—for Defendant's failure to meet his burden and identify specific admissible documents. This is not a request for production under Federal Rule of Civil Procedure 34 and the Trustee was not required to treat it as such during the parties' meet-and-confer.

Defendant also devotes a substantial portion of his Opposition arguing that the Trustee has waived Tricolor's privilege. Defendant, however, concedes that on June 29, 2026—*less than a month before the last status conference*—the Trustee's counsel explicitly told Defendant's counsel that the Trustee "has not waived, and does not intend to waive, any privileges" held by Tricolor. Schwartz Decl. ¶ 22, Ex. 2 ECF 135. But, despite this explicit advisement, Defendant feigned ignorance of the Trustee's position and requested that this Court find that the Trustee waived the privilege. Defendant did so without providing the Trustee notice that it would be seeking such a ruling or an opportunity to respond to their waiver request. The Court should see Defendant's conduct for what it was—a transparent attempt to sandbag the Trustee and obtain a privilege waiver in absentia. Although these privilege issues are not necessary to resolve the instant Motion, to the extent this Court held that the Trustee waived Tricolor's privilege, the Court should reconsider that decision and provide the Trustee with a meaningful opportunity to brief the issue.

Accordingly, the Court should quash the Rule 17 Subpoena in its entirety.

## ARGUMENT

### I. Defendant's Original Rule 17 Subpoena Should Be Quashed In Its Entirety

The Defendant devotes two paragraphs in his Opposition to defending the Rule 17 Subpoena he actually served, arguing in a conclusory fashion that it satisfied *Nixon* before deciding to offer new Subpoena requests entirely. Opp. 13-22. Because Defendant's original Rule 17

Subpoena has not been withdrawn by Defendant, the Trustee requests the Court quash the original Rule 17 Subpoena in its entirety. Ample case law establishes Defendant's requests, which seek "any and all" materials at issue, are a fishing expedition and do not seek any specific, admissible evidence. *See, e.g.*, *United States v. Louis*, 2005 WL 180885, *5 (S.D.N.Y. Jan. 27, 2005). Defendant does not seriously contest this. As no real attempt to show how the original requests satisfied *Nixon* was made, the original requests should be quashed in their entirety. *United States v. Seabrook*, 2017 WL 4838311, *1 (Oct. 23, 2017) (noting Defendant has the burden and must show how the subpoenaed materials satisfy *Nixon*.)

## **<u>II. Defendant's Revised Rule 17 Subpoena Requests Should Also Be Quashed</u>**

Unable to defend the improper requests in his original Rule 17 Subpoena, Defendant is now seeking to enforce *11 new requests* identified in his Opposition. *Supra* Section II.C. Defendant's expanded requests fail for the same reasons as his original Rule 17 Subpoena.

### **A. The Revised Requests Fail *Nixon* as They Are Not Specific**

As with his original Rule 17 Subpoena, Defendant's revised requests represent a broad fishing expedition to uncover "the truth," Opp. 29, rather than an effort to obtain a specific set of admissible documents. Simply deleting the words "all" or "any" from the beginning of a request, without identifying the specific documents at issue, or reframing the other wording of the requests, is insufficient. *Ho*, 2026 WL 184622, *4 (quashing requests on specificity grounds where the "requests could be preceded by the phrase "any and all" without changing their meaning.").[1] Although Rule 17 may not require a defendant to "detail the exact contours of materials" it seeks,

---

[1] Moreover, Defendant's revised Rule 17 Subpoena requests still incorporate and use "breathtakingly broad" definitions and "Relevant Time Period," which evince overbreadth and the true nature of the subpoena as a discovery request. Trustee at 10-11; *United States v. Tagliaferro*, 2021 WL 980004, *3 (S.D.N.Y. Mar. 16, 2021); *United States v. Huawei Tech Co*., 2026 WL 2409161, *7 (E.D.N.Y. Aug. 18, 2026) (finding the definition of "related to," which was defined by over 24 terms, was overly broad, and the definition of the "relevant time period" which encompassed 8 years and included materials made outside the time period if relevant to the issues raised during the time period, evinced the "fishing expedition" specificity seeks to prevent).

it does not permit "impermissible blanket requests for unspecified material." *United States v. Bergstein*, 2018 WL 9539856, *1 (S.D.N.Y. Jan. 22, 2018) (quashing requests on specificity grounds even after Defendant tied his requests to the indictment and excluded materials previously produced by the Government). As explained further in Section II.C below, Defendant has thus again failed to satisfy his burden under *Nixon*.

**B. The Revised Requests Fail *Nixon* as They Seek Inadmissible Evidence**

Defendant marches through various evidentiary rules, arguing that the revised Requests are admissible as business records, are not hearsay, or are covered by a hearsay exception. Opp. 24-29. These arguments cannot salvage Defendant's overbroad and improper Rule 17 requests. Notably, Defendant does not proffer the grounds for admissibility for any specific documents. Instead, Defendant speculates that broad, generally defined categories of information requested may potentially be admissible through being offered for non-hearsay purposes, such as effect on the listener. Opp. 27-29. This speculation, including whether any statements identified in the requested material were in fact *listened* to at the relevant time, fails to satisfy the *Nixon* standard, which requires showing the material is admissible *when it is sought*. *United States v. Chirico*, 2026 WL 1760129, *8 (S.D.N.Y. June 18, 2026). The fact that some requested hearsay materials *may* or *could* be admissible at trial is insufficient to meet the burden required by Rule 17. Opp. 29; *United States v. Weissman*, 2002 WL 31875410, *1 (S.D.N.Y. Dec. 26, 2002) (quashing subpoena where the requested material "*may* have some evidentiary basis…such as to show bias, to show state of mind []"). The reliance on the business record exception also fails where authentication of the documents by a relevant custodian are required before determining admissibility. *See Chirico*, 2026 WL 1760129, *9 (determining documents sought by request were not be admissible because admissibility required testimony, which was not offered at the time).

### C. The Revised Requests Still Fail to Satisfy *Nixon*

Each of the eleven purportedly narrowed revised requests independently fails to satisfy the *Nixon* standard for multiple reasons. Defendant's new requests should be quashed.

#### 1. Revised Subpoena Request 1

*Request 1: Communications concerning or referencing "Company 23" or "Ganas Tricolor Repo" sent from, to, or copying the following individuals: Daniel Chu, Jerome Kollar, Janette Valdivia, Andy Mata, Maria Perez, Rosa Cabazos, Jose Gonzalez, Vanessa Mata, and/or Salvador Salas between January 1, 2018 and December 31, 2019.*

Defendant suggests that because Revised Request 1 no longer expressly calls for "all" communications and is now limited to a 2-year time period it is proper. Opp.17-18. Not so. *See United States v. Barnes*, 2008 WL 9359654, *4 (S.D.N.Y. Apr. 2, 2008) (quashing request that sought several categories of information over a 23-month period as unspecific). Defendant fails to meet the specificity requirement seeking "any documents the trustee possesses" that mention the companies, Opp. 18, for two years, and across nine individuals, some of whom have no apparent relation to the matter. And for Defendant's own records, these are obtainable and already in the possession of Defendant himself. *Carton*, 2018 WL 5818107, *3 (S.D.N.Y. Oct. 19, 2018).

#### 2. Revised Subpoena Requests 2 and 3

*Request 2: Documents and communications concerning access to Tricolor's Integrated Dealer Management System ("IDMS"), including but not limited to user logs and the granting, limitation, denial of access, or unauthorized access of Tricolor's IDMS.*
*Request 3: Documents concerning change logs, audit trails, or other records and receipts of system activity within Tricolor's IDMS.*

Defendant's assertion that Rule 16 discovery "demonstrates that IDMS produced audit trails" merely illustrates that Defendant can, and has, already received the requested materials. Opp. 18. Moreover, these Revised Requests still have no time limitation, impermissibly seeking records for an over eight-year time period. Nor do these revised requests identify whose communications it seeks, thus requiring the Trustee to search records of all former Tricolor

employees. Finally, the Trustee has made clear that she does not have possession, custody, or control of the native IDMS system. Trustee Mot. 17-19. DealerSocket does. *Id.*

3. Revised Subpoena Requests 4, 5, and 6

*Request 4: Investigation reports and other communications with Davis Polk & Wardwell LLP or Ernst & Young related to double pledging in 2021, including interviews of Tricolor employees.*
*Request 5: Investigation reports and other communications with Reed Smith or Crowe LLP related to Daniel Chu's corporate credit card expenses prepared in 2023.*
*Request 6: Investigation reports and other communications with Sidley Austin LLP or FTI Inc. in August or September 2025, including any interviews of Tricolor employees.*

The only documents specifically requested in connection with these requests are "the underlying investigation reports" and the broadly defined "any interviews." Otherwise, these requests seek "communications" and "work product" without any knowledge of what exactly is sought within the files, whether Defendant is involved, or how. Opp. 19-21. This limited knowledge cannot satisfy the *Nixon* standard. And limiting the request to the entire investigative file for one year, rather than eight, does not cure the lack of specificity in the requests. Further, the fact that the materials "*could* satisfy any number of the hearsay exceptions" does not show the documents are admissible at trial. Opp. 29 (emphasis added). This is important where, as the case here, the requested materials are likely subject to the attorney-client privilege. And Defendant fails to contend with the fact that the documents he himself requested the Trustee segregate on attorney-client privilege grounds likely overlap with these requests. Trustee Mot. 7-8.

4. Revised Subpoena Requests 7 and 8

*Request 7: Funding requests sent to JPMorgan Chase Bank N.A. after January 1, 2024.*
*Request 8: Funding requests sent to Libremax after October 1, 2022.*

It is unclear how these new requests relate to Defendant's prior request for the entire email archives for eight years for twelve individuals. Opp. 21. There is no indication of the breadth of funding requests at issue in the respective time periods, which for Libremax, spans almost three

years. *Bergstein*, 2018 WL 9539856, *2 (noting requests seeking "a potentially vast number of unspecified payments or transactions" is "prototypical of 'fishing expeditions'"); *Carton*, 2018 WL 5818107, *3 (determining a nearly three-year time period for the Subpoena alone was evidence of a fishing expedition). Further, as stated by Defendant, the way the funding requests were transmitted changed from email attachments to the Box platform, adding to the undue burden and expense of searching for any responsive materials. Opp. 21-22.

5. <u>Revised Subpoena Requests 9, 10, and 11</u>

*<u>Request 9</u>: Documents and communications named or attaching files named "Data for Tricolor All Contracts since 2010" dated or sent between July 2022 and July 2024 or between September 2024 and December 2024.*
*<u>Request 10</u>: Documents and communications sent or generated by the "Tricolor IT Reports" email account prior to April 2020.*
*<u>Request 11</u>: Documents saved to the shared folder with a file path \\tricolor.com\shared\Accounting Reports\IT Reports\WellsFargoServicing.*

These new requests all fail on specificity grounds. Although Defendant may not have included the word "all" or "any" at the beginning of the revised requests, as structured, and considering Defendant's explanation in support, they each still call for all documents at issue or contained within the applicable shared folder. This is again an improper fishing expedition that could implicate thousands of documents, if not substantially more, generated over the course of eight years. For example, the request for all emails for a two-year time period from "Tricolor IT Reports" is plainly overbroad and would certainly encompass materials that are not relevant to Defendant's defense. And Defendant's statement that "the trustee either possesses such materials or does not" further confirm that Defendant is engaging in a fishing expedition, attempting to uncover information, rather than seeking identifiable documents to use as evidence at trial. Opp. 22; *Ho*, 2026 WL 184622, *4 (quashing request as the assertion

the Subpoenaed party could say if it had nothing else showed "uncertainty as to whether the categories of documents…exist beyond a hunch").

### D. Defendant Failed to Respond to the Trustee's Argument that the Subpoena is Unduly Burdensome

Defendant's Opposition fails to contend with the Trustee's argument that the Rule 17 Subpoena should be quashed in its entirety given the unreasonable and oppressive burden it imposes on the Trustee, who has limited estate assets, and in light of her fiduciary duty to recover assets to distribute to creditors. *In re Transmar Commodity Grp.,* 2018 WL 4006324, *5 (Bankr. S.D.N.Y. Aug. 17, 2018). That is because he has no response. Defendant's revised Rule 17 Subpoena requests do not limit this burden—they increase it. The Trustee will be required to search Tricolor's voluminous data for records relating to Defendant's *11 separate requests*, process the data for review, determine which materials are responsive, and then conduct a fulsome privilege review, which will be highly burdensome to the Trustee and the bankruptcy estate. Trustee Mot. 21-22. Further, where an argument is not meaningfully challenged, the opposition to it is waived. Therefore, for this reason alone, it is proper to quash the entirety of both subpoenas.

## III. The Trustee Has Not Waived Tricolor's Attorney-Client Privilege

Although not necessary to decide this motion, Defendant's arguments regarding Tricolor's attorney-client privilege should be rejected as well.

Defendant's Opposition is littered with inconsistent representations and *confirms* that Defendant is, and has been, aware of the Trustee's repeated assertion of privilege and ongoing preparation of a privilege log.[2] Opp. 6-8. But, notwithstanding the Trustee's direct representations to Defendant in both May and June 2026 that she had not waived and is asserting the privilege,

---

[2] The Trustee completed her privilege review approximately one month ago. The Trustee is currently in the process of finalizing her preliminary draft of the privilege log and expects to provide it to the government shortly. André Decl. ¶ 10.

Defendant represented to the Court less than a month later the Trustee's position was somehow "unclear."[3] Opp. 8. This is also in spite of Defendant's prior representations to the Court in which Defendant admitted that the Trustee held Tricolor's corporate attorney-client privilege, and any review of the imaged laptops without a filter team review would "impermissibly abrogate the corporate privilege, which we understand the Trustee has not waived." ECF 59 at n. 4. Defendant also argued in the same motion that the act of imaging a device does not amount to a waiver, and that the government's broad theory was contrary to law and the Trustee's position on privilege. ECF 59 at 15. The only person with inconsistent positions who is attempting to use the privilege as both a sword and a shield is Defendant—not the Trustee.

Defendant also makes much out of the fact that the Trustee did not claim privilege over the exhibits previously submitted to the Court in June 2026 before they were publicly filed. Opp. 7; Schwartz Decl. Ex. 2. Instead, this demonstrates the unremarkable position that the Trustee, in line with the Court's analysis, did not believe those three documents contained substantive legal advice, and thus, were not privileged. ECF 80; André Decl. ¶ 3. As such, these documents cannot establish broad subject matter waiver to either the 2023 or 2025 Investigation. As to the documents attached to the Opposition, the Trustee was not aware the materials were in Defendant's possession until the filing, and has promptly taken steps to request the documents from both the government and Defendant to determine whether they should be clawed back. André Decl. ¶ 9.

Additionally, although Defendant did send the June 30 status conference transcript to the Trustee, this email does not support Defendant's waiver argument. Crucially, Defendant *never* indicated in that email that he was challenging the Trustee's privilege assertion or would be

[3] This apparent confusion may have come from the government, which despite knowledge that the Trustee was asserting the attorney client privilege, apparently suggested in conversations with Defendant (in which the Trustee was not present) the Trustee waived privilege. Opp. 6.

seeking a ruling from the Court that the privilege was waived during the next status conference. Schwartz Decl. Ex. 2. Indeed, it appears this was intentional so Defendant could argue the Trustee had waived privilege without the Trustee being present to contest this assertion. Had Defendant's counsel notified the Trustee he was challenging her privilege assertions, the Trustee's counsel would have appeared and requested the opportunity to address the issue promptly.

To be clear, the Trustee has never changed her position on Tricolor's privilege; she has steadfastly and repeatedly asserted the privilege to both the government and Defendant. And it is undisputed the Trustee was never asked nor ordered to appear to assert or brief any of these privilege issues. When the Trustee's privilege was discussed, it was in the context of status hearings involving Defendant's own assertions of his individual privilege—not the Trustee's.

Defendant's claim that the Trustee "has not taken any steps to preserve the corporate privilege" is directly contradicted by the Trustee's repeated and steadfast invocation of the privilege, the Clawback Agreement with the government, and the Trustee's extensive and rigorous privilege review. Opp. 24. The Trustee has not waived the privilege over each of the numerous documents Defendant seeks in the revised requests.

## CONCLUSION

The original Rule 17 Subpoena constitutes an overbroad fishing expedition, not narrowly tailored to the receipt of admissible evidence. And Defendant's revised requests fail for the same reasons and would only increase the burden on the Trustee and bankruptcy estate. The original and revised Rule 17 Subpoena should both be quashed in their entirety.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Julia M. Beskin*
Julia M. Beskin
**MCDERMOTT WILL & SCHULTE LLP**

919 Third Avenue
New York, NY 10012
Tel.: (212) 756-2000
jbeskin@mcdermottlaw.com

Julian Lucien André (*pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90064
Tel.: (310) 551-9335
jandre@mcdermottlaw.com

Rachele Lajoie (*pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
200 Clarendon Street
Boston, Massachusetts 02116
Tel.: (617) 535-4000
Fax: (617) 535-3800
rlajoie@mcdermottlaw.com

***Attorneys for the Chapter 7 Bankruptcy Trustee to Tricolor, Anne Burns***

## CERTIFICATE OF SERVICE

I, Julia Beskin, hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 28, 2026.

*/s/ Julia M. Beskin*
Julia M. Beskin