BOIES SCHILLER FLEXNER

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

September 19, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

**Re:** ***United States v. Chu*,**
**Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu. We write to respectfully bring to the Court's attention the failure of the government and the Tricolor trustee to abide by rulings made by the Court on July 29 concerning the trustee's response to a grand jury subpoena. At the July 29 conference—after an extensive discussion of what had and hadn't been produced by the trustee—the Court ordered the government to obtain from the trustee by August 28 a statement of whether it had produced all documents responsive to a grand jury subpoena and, if not, why not.

August 28 came and went with no such statement. A week later, the trustee finally produced a log itemizing over 45,000 documents it withheld as privileged, but still no statement as to whether its production was otherwise complete. And when we asked the government whether it intended to obtain such a statement as ordered by the Court, or whether it had questioned the propriety of the trustee's extensive privilege log given the government's own long-held view (not to mention the Court's more recent order) that privilege had been waived, the government claimed not to understand. So, unfortunately, we must return to the Court for further assistance to get a straight answer to the question of what the trustee is withholding, and why.

## Relevant Background

### A. The Grand Jury Subpoena

The government served a single grand jury subpoena on Tricolor in early September 2025. The company and the court-appointed bankruptcy trustee have made numerous productions in response, over the course of nearly a year. Among the first productions were complete images of ten laptops of some of the company's senior-most executives, including the CEO, CFO, and COO. Over the course of 28 rolling productions, Tricolor and/or the trustee has produced more than 1.1 million records plus 4.3 terabytes of additional raw data.

While that is certainly a lot of material, it is far from clear that the response to the grand jury subpoena is complete.

From the start, the government has taken the position that any corporate privilege was waived when the company produced the complete laptop images without any restrictions,[1] but it took no steps to confirm whether the trustee was withholding documents on the grounds of privilege. Even when the government learned that the trustee *was* withholding material on privilege grounds—productions included redactions for privilege and had material gaps, and when asked by the defense the trustee expressly confirmed that it was asserting privilege—the government never demanded a log. As discussed below, we now know the trustee was withholding more than 45,000 responsive documents.

Further, the government has acknowledged that its approach to the trustee's productions has been an "iterative process," the most charitable version of which would mean, as the Court recently described it, "certain requests are prioritized and others are deferred." ECF No. 159 at 7. With respect to requests that were "deferred" for whatever reason, it is not clear whether responsive documents have now been produced, whether they are still being withheld, or whether the government agreed and/or asked the trustee not to produce them. Again, as discussed below, there is strong reason to believe that responsive and highly relevant documents have not been produced.

**B. The Court's July 29 Orders**

At a pretrial conference on June 30, the defense raised the issue of the government's failure to enforce its own grand jury subpoenas, which at that point had necessarily been outstanding for at least six months. The Court declined at that time to order the government to take any specific action to enforce the subpoenas, but directed it to "have a communication with those persons or entities that receive grand jury subpoenas that if their returns are not complete by the last business day in the month of July, this may present grave problems to the government and its case, and based on the advice received from the presiding judge." ECF No. 110-12 (June 30, 2026 Tr.) at 29.

By the end of July, it was clear to the defense that the trustee's production could not possibly be complete. Large categories of documents that are highly relevant to the charged offenses were missing. Among them were historical emails from the government's chief cooperator, Jerome Kollar; funding requests involving at least two of the charged loan facilities; documents relating to internal investigations of double-pledging undertaken by the company in response to a whistleblower report years earlier and, separately, of potential misuse of corporate credit cards; and documents from the accounting system alleged to have been falsified. We sent the government extensive correspondence identifying these, and other, gaps. *See* ECF No. 44-25; ECF No. 110-14. In addition, notwithstanding the government's view that privilege had been waived, the trustee confirmed that it was asserting privilege over some unspecified universe of material. ECF No. 135-2.

[1] *See* ECF No. 135-4 ("July 29, 2026 Tr.") at 11 (AUSA confirming that the government's position is that any Tricolor corporate privilege was waved as to the contents of the laptop images produced pursuant to subpoena).

At the July 29, 2026 conference, we raised the issue of the completeness of the trustee's productions. The Court was troubled by the government's lack of diligence: "If they have received less than all that is responsive, why shouldn't the government pursue the less than all that's responsive?" July 29, 2026 Tr. at 13–14; *id.* at 16 ("it seems to me that you have some sort of duty to police an unexplained absence."). The Court remarked that "It is at least peculiar, and it may be beyond peculiar, that you, the government, would detect gaps in the production and not make due inquiry. For one thing, it's also peculiar that the trustee in bankruptcy would be withholding anything from the grand jury. . . . So this seems to me that if we want to have a discussion about what's the line between peculiar and required, it's certainly peculiar that the government would blithely accept gaps, unexplained except perhaps by a general reference to, well, we have some privileged materials. It seems to me that this trustee should be put to it at this point." *Id.* at 14–15.[2]

Ultimately, to discern "the line between peculiar and required," the Court ordered the government to obtain from the trustee a statement of whether it had produced everything in response to the grand jury subpoena, and if not, why not. For example, some responsive materials were clearly withheld on privilege grounds, as the government acknowledged. *Id.* at 20. Yet the Court ruled on July 29 that "as to the laptops that were turned over pursuant to a grand jury subpoena, on or about September 4, 2025, without an assertion of privilege by the company's counsel, any attorney-client privilege that could have been asserted on the contents of those laptops is waived. The same would be true for any work product protection or any other cognizable privilege." *Id.* at 11–12.

In another case, it also might be "customary" for the government and a subpoena recipient to negotiate the scope of the subpoena to account for concerns of burden and proportionality. *Id.* at 19; *see also id.* (court recognizing that scope of subpoena may have been negotiated so that, hypothetically, the company didn't have to "dig out of Iron Mountain documents for a subsidiary that we sold"). But that didn't happen here, allegedly.

The Court observed that the government "has been the agent for the grand jury in serving this subpoena and it is appropriate for it to require of the trustee that he assert whether his production is complete." *Id.* at 18.

> THE COURT: . . . . I do believe it's customary for there to be such a discussion and for there to be a narrowing. And I don't hear you [*i.e.*, the government] standing before me and saying, oh, let me explain this. We had a discussion, and we narrowed the scope of the grand jury subpoena, item number 4, to only reach this, that, or

---

[2] The government initially claimed that it had "not identified large gaps in things that we are missing." July 29, 2026 Tr. at 14. However, it later conceded that the trustee had asserted privilege, *id.* at 20, notwithstanding the government's view that privilege was waved. As we now know, that assertion covers more than 45,000 documents—which would certainly seem to constitute a "large gap." And in any event, the government was on notice of the various additional categories of highly relevant materials that the defense had already pointed out were missing from the trustee's productions. *See, e.g.*, ECF No. 44-25; ECF No. 110-14.

> the other thing or so many custodians or certain locations. I don't understand you to say that.
>
> What the government is saying is, we didn't see any gaps. We think they gave us everything the subpoena asked for, without exception, without privilege. Now Mr. Schwartz is telling us that [there] are gaps. I'm saying, well, **ask them [*i.e.*, the trustee] to please send you the following letter. Our compliance with the subpoena is full and complete, period**. That's not hard. It's not expensive. It doesn't take time.
>
> * * *
>
> It seems to me that if you have an intelligent position that you can articulate, that in negotiation with the corporation we carved out of paragraph 4 the subpoena, the documents for the transferred subsidiary of which there may be copies in Iron Mountain, if you cannot articulate that you have carved things out, then **I am going to direct you to get a statement from the trustee that their production is complete except for**. And if the except for is documents withheld on the grounds of attorney-client privilege or work product, then require them to proceed in some manner in which you have intelligent information about it.

*Id*. at 19–21 (emphasis supplied).

The Court later summarized: "I am going to require the government to tell me what the response by the trustee is to the question, is this everything? If everything is matched against the subpoena, whatever it may provide, and they say yes, it's everything, or they say, well, it's everything except those 12 categories he told me I don't have to bother with, we are going to know something." *Id.* at 26. At the government's request, the Court set a deadline for the trustee's compliance of August 28. *Id.* at 22.[3]

### C. The Government and the Trustee's Failure to Abide By The Court's Order

August 28 came and went, and we received nothing from either the government or the trustee: no statement that the trustee's production was complete, no log, nothing. On the same date, however, in support of her motion to quash Mr. Chu's proposed Rule 17 subpoena, counsel for the trustee submitted a declaration saying that she had "completed her privilege review on July 24, 2026"—that is, even before the Court's July 29 order—but that her "preparation of the privilege log has been ongoing." ECF No. 152 ¶ 10. The government apparently had done nothing either to enforce the Court's July 29 order, or to enforce its own grand jury subpoena. It continued to shirk from its "duty to police an unexplained absence" from the trustee's production. July 29, 2026 Tr. at 16.

---

[3] While we presume the government relayed the Court's orders to the trustee, to be safe, the defense emailed counsel for the trustee a copy of Mr. Chu's August 6 filing, ECF No. 123, which described and quoted the Court's July 29 ruling. *See* ECF No. 135 ¶ 30.

BSF

On September 1, the defense wrote to the government, asking "whether the trustee did provide a response in writing regarding the completeness of its production as ordered by the Court, and if such a response was provided, share it with us? To the extent the trustee has not provided that information in writing, would you please confirm that fact and let us know if the government is taking or planning to take any steps to enforce the court's order? Likewise, if you have any information regarding the status or timing of the privilege log, we would appreciate you sharing it with us." Ex. 1 at 4. The government responded the same day with a single sentence: "The trustee's counsel said that they expect to provide a privilege log this week." *Id.* Obviously, neither the government nor the trustee had sought an extension of the Court's August 28 deadline—the very deadline that the government had requested.

The government's response also was silent on whether the trustee had provided a statement that, "except for" the assertedly privileged materials, she had produced all responsive documents. July 29, 2026 Tr. at 21. On September 2, we followed up to ask "whether the trustee has confirmed in writing to you that they have produced all materials responsive to the original subpoena other than those withheld for privilege (and if not, indicating what was withheld)?" Ex. 1 at 3. The government didn't respond, so we asked again two days later. *Id.* In the interim, the government forwarded a privilege log received from the trustee. The privilege log lists 45,856 documents; an accompanying cover letter from the trustee conceded that the log was not the product of an actual document review, but "relied primarily on the document metadata." Ex. 2 (email and cover letter); *see also* Ex. 3 ("Priv Log").[4] More on that below.

Meanwhile, in response to the defense's renewed questions about whether the government had complied with the July 29 order and obtained a statement from the trustee about the completeness of her production, the government replied on September 4: "You have what we have on the subject . . . ." Ex. 1 at 2–3. In response, we asked whether the government had taken any steps to understand the basis for the trustee's invocation of privilege given the Court's order that any privilege had been waived. *Id.* at 2. Last week, the government responded and claimed not to understand what "order regarding the trustee's waiver of privilege as to the Tricolor laptops" we were talking about. *Id.* *Compare* July 29, 2026 Tr. at 12 ("THE COURT: . . . . as to the laptops that were turned over pursuant to a grand jury subpoena, on or about September 4, 2025, without an assertion of privilege by the company's counsel, any attorney-client privilege that could have been asserted on the contents of those laptops is waived.").

### D. There Are Very Substantial Gaps In the Trustee's Productions Outstanding

In sum, and despite the Court's orders, we still have no idea what the trustee is withholding and why. All we know is that (a) it has withheld more than 45,000 documents on claims of privilege despite the Court's finding of waiver; (b) numerous other highly relevant documents that are certainly in the trustee's possession have neither been produced nor logged; and (c) the government has either affirmatively blessed (or worse, requested) this non-production, or else it has shown an inexplicable lack of curiosity about the facts underlying its own case.

4 Exhibit 3 is being submitted electronically to the Court.

First, as to the log. It plainly does not comply with Local Rule 26.2. Its columns are date, record type, author, sender, recipients, email subject or file name, and a privilege label (*i.e.*, either attorney-client privileged or work product). It has no description of subject matter and it does not say what legal advice was sought or given. It certainly falls short of the standard the Court set on September 9 for the trustee's Rule 17 log: type of document, general subject matter, date, author and recipients and their relationship, supported by "a particularized affidavit or affidavits sufficient to establish the privilege." ECF No. 159 at 10.

Even with these deficiencies, and putting aside the fact that the trustee has already been held to have waived the privilege, it is obvious the log is overinclusive. Within the first few rows alone, the trustee claims privilege over budget templates copied to Jerome Kollar and Ameryn Seibold, law firm invoices, an employee's offer letter and onboarding documents, a loan servicing meeting agenda sent to about twenty employees, and an email forwarded to a personal Gmail account. Priv. Log Nos. 1–4, 7–8, 11–12, 19, 21–23, 29, 31, 33–36. The trustee has over-designated before. In June, the government produced roughly 412,000 documents from the trustee, including email and Microsoft Teams data that "were previously withheld by the trustee as privileged, but which, upon further review, the trustee determined were not privileged." Ex. 4 (June 2, 2026 email from the government).

The log is also overinclusive because it lists numerous documents from the laptop images that Tricolor produced on September 4, 2025. *E.g.*, Priv. Log Nos. 44819, 43751. The Court has twice ruled that any corporate privilege over those materials is waived. July 29, 2026 Tr. at 11–12; ECF No. 159 at 9. The trustee has never explained—and the government has apparently never sought an explanation—as to how those materials can still be privileged given the Court's ruling. In addition, the log contains numerous documents that have already been produced by third parties pursuant to grand jury subpoena. *E.g.*, Priv Log. No. 43802.

The problems with the log run deeper, too. Even though the trustee acknowledged that the log was generated by relying "primary on the document metadata," Ex. 2, the trustee's methodology is inexplicable. For example, at least 21,000 of the emails on the log—nearly half of all of the logged documents—do not include a law firm or anyone from Tricolor's legal or compliance departments, and their subject lines give no indication that they contain privileged communications. *See* Priv. Log. And of the approximately 17,000 non-email attachments on the log, the only information provided—file name and, for some, author—indicates that most were drafted by non-legal personnel and are unlikely to contain legal advice. *See e.g.*, Priv Log Nos. 3973, 3974, 3975 (documents with no author and file names "image008," "image009," and "image001," respectively).

And yet despite these obvious infirmities—logging documents from the laptops over which privilege has been found to have been waived and logging tens of thousands of documents that appear facially non-privileged—the government apparently had no questions for the trustee.

Meanwhile, there are also large categories of documents that the trustee has not produced, but also not logged. For example, the log does not appear to list any materials created by Sidley Austin or FTI related to their engagement by Tricolor prior to its bankruptcy to investigate the same conduct that underlies the charges here. Sidley and FTI's work product ought to include

notes or memoranda of interviews with key Tricolor employees and other documents directly related to the charged offenses. The trustee has previously told the Court that those materials are "likely subject to the attorney-client privilege." ECF No. 151 at 6. But they have neither been produced nor logged, and the government has not followed up. Why? A cynic might suggest that someone is trying to avoid the government being in possession of materials that would exculpate Mr. Chu, and which would need to be produced to him. But even giving all parties the benefit of the doubt, this is a clear example of an unexplained and at least "peculiar" gap in the trustee's production, and the whole purpose of the Court's July 29 order was to determine "the line between peculiar and required," because "it's certainly peculiar that the government would blithely accept gaps, unexplained except perhaps by a general reference to, well, we have some privileged materials. It seems to me that this trustee should be put to it at this point." July 29, 2026 Tr. at 15.

The government's lack of curiosity as to the unexplained gaps in the trustee's production, moreover, must be contrasted with the fact that at the very same time, it has doggedly litigated Mr. Chu's own claims of privilege, properly asserted document-by-document with itemized logs, briefing, and *in camera* review of exemplars. Yet the government has apparently asked the trustee nothing.

**Request**

As the chronology above more than demonstrates, despite repeatedly seeking from the government the information that the Court directed it to obtain from the trustee, Mr. Chu is still largely in the dark regarding the trustee's productions and the government seemingly has no interest in understanding what the trustee has *not* produced. Mr. Chu therefore respectfully requests that the Court:

1. Direct the government to file, within seven days, the trustee's written statement that her production in response to the grand jury subpoena is complete, identifying and explaining any category narrowed or excluded by agreement, any documents withheld as privileged via a log compliant with the Local Rules, and any other category of documents as to which the trustee's production is incomplete, and why—as the Court already ordered on July 29 (*see* July 29, 2026 Tr. at 11–26);

2. Direct the government, or alternatively the trustee, to immediately produce a copy of the grand jury subpoena so that the defense and the Court can reasonably determine whether the trustee's productions are complete and what categories of documents may be being withheld. At this point, the subpoena itself is material to the defense, including potential motion practice, and so is producible under Rule 16(a)(1)(E)(i) or Rule 17. *See* July 29, 2026 Tr. at 26 ("I am going to require the government to tell me what the response by the trustee is to the question, is this everything? **If everything is matched against the subpoena, whatever it may provide**, and they say yes, it's everything, or they say, well, it's everything except those 12 categories he told me I don't have to bother with, we are going to know something." (emphasis supplied)). And given the status of the case, there is no need to keep the subpoena secret. *See generally Douglas Oil Co. of California v. Petrol Stops Nw.,* 441 U.S. 211, 223 (1979).

3. Direct the government to disregard any privilege claim by the trustee, or any clawback or segregation demand, as to documents within the September 4, 2025 production, and direct the government to produce to Mr. Chu any such documents it has segregated at the trustee's request (*see* ECF No. 159 at 9 ("The Court has already ruled that the attorney-client privilege of Tricolor was waived as to any documents or electronically stored information turned over to the government in response to a grand jury subpoena on or about September 4, 2025. The Trustee did not enter a clawback arrangement governing potentially privileged material until November 25, 2025, and the agreement expressly carved out any waiver of privilege that preceded its execution." (citations omitted)); and

4. As to any other documents over which the trustee claims privilege, set a briefing schedule. Mr. Chu has no objection to that briefing schedule being synced with the already-established briefing schedule on the trustee's privilege objections in response to the defense Rule 17 subpoena (*see* ECF No. 159 at 10).

While Mr. Chu attempted to obtain further information about the trustee's productions without court intervention, those attempts have proven futile. Mr. Chu therefore respectfully requests that the Court enforce its prior orders, which the government and the trustee have apparently conspired to ignore.

Thank you for your consideration of these requests.

Respectfully,

/s/ *Matthew L. Schwartz*

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
cwenner@bsfllp.com
jkelly@bsfllp.com

WEIL, GOTSHAL & MANGES LLP

Adam Fee
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
E-mail: Adam.Fee@weil.com
*Attorneys for Daniel Chu*