BOIES SCHILLER FLEXNER

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

September 23, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

**Re:** ***United States v. Chu*, Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu and write pursuant to the Court's Order of September 16, 2026, which resolved the government's letter motion of May 18, 2026, ECF No. 41 (the "Privilege Motion"). The Court's order held that "as to work product materials stored on Chu's laptop or other devices surrendered to A&M on or about September 4, 2025, the work product protection is waived. As to other materials documents on Tricolor systems as to which Chu seeks work product protection, the Court will accept further argument from Chu within 7 days of this Order, and the government may respond 7 days thereafter." ECF No. 160 at 10.

Mr. Chu's Revised Privilege Logs assert work product protection over 382 documents. However, 310 of those were located on the image of Mr. Chu's laptop seized pursuant to the search of his home in October 2025 (labeled 1B2), which the government has agreed not to review and are thus outside the scope of the Privilege Motion. ECF No. 121 at 2. At the time Mr. Chu produced the Revised Privilege Logs, and as set forth in the corresponding cover letters to the government, documents from 1B2 were included in the logs to account for the possibility that copies of those documents were present on other devices within the scope of the Privilege Motion. However, Mr. Chu has since confirmed that these 310 documents appear to only be located on 1B2. Because the government has already confirmed it will not access *any* materials from 1B2, the Court's ruling should be tailored to exclude any materials from that device.

Of the remaining 73 documents, Mr. Chu withdraws his assertion of work product privilege as to three of the documents—leaving 70 documents at issue.[1] These 70 documents are highlighted on the copies of the Revised Privilege Logs attached to this letter, *see* Exs. 1 & 2, and we have tailored this response to the Court's September 16, 2026 order to focus on those 70 documents. Should the government backtrack (again) and seek to review documents on 1B2, Mr. Chu respectfully requests to be heard further.

---

[1] Mr. Chu does not waive his previous claims of attorney-client privilege as to these documents.

BSF

The work product protection applies to documents prepared in anticipation of litigation. *United States v. Adlman*, 134 F.3d 1194, 1198 (2d Cir. 1998); *see also* Fed. R. Civ. P. 26(b)(3). The work product protection is much broader than the attorney-client privilege, including because "the protection afforded work product is not waived merely because the material is disclosed to a third party." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). Rather, the work product protection applies unless the disclosure "substantially increase[d] the opportunities for potential adversaries to obtain the information." *United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012). Disclosures to non-adversaries, however, typically do not negate the protection. *See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441 (S.D.N.Y. 2004) (plaintiff's disclosure of internal investigative reports to its independent auditor did not waive the work product protection). Importantly, the scope of "potential adversaries" is defined not by reference to "any conceivable future litigation," but instead by whether the materials were disclosed to a party that could be an adversary in "the sort of litigation the [withheld] documents address." *United States v. Deloitte LLP*, 610 F.3d 129, 140–41 (D.C. Cir. 2010) (holding that Dow Chemical had not waived work product protection over documents provided to auditor); *see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 14 (S.D.N.Y. 2022) (applying *Deloitte*'s holding).

Here, the 70 documents within the scope of the Court's ruling are covered by the work product protection.

- 13 documents are invoices that describe the content of legal services performed on behalf of Mr. Chu on a variety of matters, including active and anticipated litigation;
- 2 documents are draft complaints related to litigation concerning the construction of Mr. Chu's Los Angeles home;
- 52 documents are draft trust or estate planning documents;
- 1 document is a background report provided in connection with litigation;
- 1 document is a draft settlement agreement; and
- 1 document is a draft agreement related to the acquisition of property in Aspen.

*See* Exs. 1 & 2. The relevant particulars for each document, including the dates for each document, are included in the log but the materials generally relate to personal estate planning and real estate purchases and litigation that are wholly disconnected from the allegations in the above-referenced Indictment.

Each of the documents at issue were found in images of cellphones seized from Mr. Chu's home pursuant to a search warrant, labeled 1B1, 1B5, and 1B21. None of the documents are from the version of the laptop imaged by Alvarez & Marsal ("A&M") and later produced by Tricolor to the government in response to a grand jury subpoena. In other words, all 70 documents are subject to the parameters of the judicially authorized search warrant obtained for Mr. Chu's Miami residence. *None* of the 70 documents are related to the subject offenses in the warrant, no less the particular categories of materials authorized to be seized. Accordingly, notwithstanding Mr. Chu's

valid assertions of work product and privilege, the government should not be permitted to access these materials for any reason because they are simply not responsive to the search warrant.

Moreover, the documents are indeed covered by the work product protection. All of the 70 documents were created in anticipation of litigation. The invoices describe services provided either directly in connection with the litigations described on the Revised Privilege Logs, or related to legal issues that may reasonably have been expected to be litigated. Trust and estate planning documents and acquisition agreements are commonly prepared by attorneys for the protection of their clients in potential litigation related to the estate or relevant transaction.[2] That was the case here. The draft complaints, background report, and settlement agreement also all constitute work product related to active or anticipated litigation, including litigation concerning the lease of Dallas residential property.

The 70 documents were also not disclosed to an adversary, nor was there any substantial likelihood that they would be at the time they were sent or received. *Terra Nova Ins.*, 212 F.R.D. at 169. Mr. Chu did not voluntarily disclose these materials to anyone—they were acquired by the government pursuant to search and seizure. To the extent that the Court views the use of Tricolor's email system as a "disclosure," that disclosure would be to Tricolor, the company that Mr. Chu founded and led—certainly not an "adversary" as the caselaw contemplates the term. *See Deloitte*, 610 F.3d at 140–41. Mr. Chu had no reason to believe that his limited personal use of Tricolor's email system would risk years' later disclosure to the United States government and be used against him in a criminal case.

Moreover, Mr. Chu did not waive the protection. As noted above, none of the 70 documents logged were from the laptop imaged by A&M in September 2025 (labeled 1B10). Even if any of the 70 documents could be located on that laptop, however, the Court should not find that the imaging amounts to a waiver. A&M was engaged to conduct an internal investigation of Tricolor, and specifically confirmed that Mr. Chu's laptop was imaged because it "just want[ed] to have a defensible preservation effort and ensure data for senior leaders is readily available if needed." ECF No. 160 at 10. By consenting to the laptop's imaging under certain conditions aimed at protecting his personal materials, Mr. Chu was not disclosing protected work product to an adversary, nor is it reasonable that he would have understood that the imaging "substantially increase[d]" the opportunity that the government would obtain the information. *See United States v. Ghavami*, 882 F. Supp. 2d 532, 541 (S.D.N.Y. 2012) ("This risk must be evaluated from the viewpoint of the party seeking to take advantage of the doctrine."). The Court's September 16 Order that the imaging of Mr. Chu's laptop resulted in a waiver of attorney-client privilege, ECF No. 160 at 10, should not extend to work product protection. The Court specifically noted that the disclosure occurred only once "a grand jury subpoena intervened." *Id.* at 9. In fact, it took a grand jury subpoena, Tricolor's bankruptcy filing, and the trustee's production of the laptop image without privilege review or notice to Mr. Chu for the laptop image to end up in the hands of the government. Thus, even if Mr. Chu "voluntarily disclosed" his laptop "to A&M," *id.* at 10, that

---

[2] The government's only plausible theory of relevance would be its (mistaken) belief that Mr. Chu's estate planning and trust endeavors were designed to shield the proceeds of the charged crime from creditors and/or law enforcement. On that theory, estate planning and trust documents are necessarily in anticipation of litigation.

disclosure—prior to any notice that there was or would be a criminal investigation—did not substantially increase the likelihood that its contents would be produced to an adversary under the work product protection analysis.

Finally, Mr. Chu respectfully submits that any waiver of work product protection (or privilege) that the Court should find be limited to the specific material that is subject to the government's Privilege Motion (and its subsequent affirmation that it was eschewing any review of 1B2) and that the release of any materials to the government case team pursuant to the ruling not constitute a waiver over any broader set of documents or subject matter in this or any other litigation. *See* Fed. R. Evid. 502(d). Mr. Chu therefore requests that the Court issue an order pursuant to Federal Rule of Evidence 502(d) that clarifies the limitations of the September 16 ruling and that the disclosure made pursuant to the Court's ruling does not constitute "a waiver in any other federal or state proceeding." *Id.*; *see, e.g.*, *United States v. Daugerdas*, 2012 WL 92293, at *1 (S.D.N.Y. Jan. 11, 2012).

Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
cwenner@bsfllp.com
jkelly@bsfllp.com

WEIL, GOTSHAL & MANGES LLP

Adam Fee
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
E-mail: Adam.Fee@weil.com

*Attorneys for Daniel Chu*